JEROME B. PARMENTER, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

While a statute limiting the time in which to bring an action upon contract. is held to affect only the remedy, not the obligation, this is with the proviso that a reasonably sufficient time is left in which a party may after the passage of the act commence his action.

A statute cutting down the right to commence an action upon a cause of action then existing, from a period without limitation to a few months. after the passage of the act, does not give such reasonable time; and so, is unconstitutional.

The legislature has the right to enlarge the time within which a claim against it may be filed, provided the claim as between citizens would not already be outlawed.

The claimant in 1876 entered into a contract with the state to do certain. printing of a public nature for two legislative sessions for $47,500 each. session. Attached to the contract was an alternative bid which had been made by claimant giving specified prices for each piece of work. The contract contained this provision "in the event of an extra session the said work shall be done and materials furnished for the prices stated in the alternative bid annexed, and the same prices shall also be paid for any work and materials ordered not for the use of the legislature." Upon a claim for work ordered by the legislature during the two sessions, but not for its use, *held*, that this work was not included in the gross sum, but claimant was entitled to payment therefor at the prices specified in the bid annexed; that the words "not for the use of the legislature" were not limited to work ordered at an extra session.

The claim was presented under the special act of 1888 (Chap. 541, Laws of 1888), authorizing the Board of Claims to hear, audit and determine it. Claimant filed no claim with the board of audit, nor did he file any claim with the Board of Claims within the time limited by the act of 1884 (Chap. 60, Laws of 1884), for the filing of claims with the latter board which were formerly cognizable by the board of audit, *i. e.*, July 1, 1884. *Held*, that said act of 1888, was a valid exercise of legislative power, and gave the Board of Claims jurisdiction to determine as to

the validity of the claim; that it was not violative of the constitutional provision (Art. 7, § 14) prohibiting the auditing or payment of any claim against the state "which, as between citizens of the state, would be barred by the lapse of time;" that construing said provision as meaning the general laws limiting the rights of citizens to commence similar actions, six years had not elapsed from the time the claim accrued up to July 1, 1884, when the right to file his claim was taken away; and so, as he had not had that time in which to commence his action, the claim as between citizens would not be outlawed.

Also *held*, that, as the act organizing the Board of Claims (Chap. 205, Laws of 1883) gave no power to file the claim before that board, its jurisdiction being limited to claims accruing within two years prior to the filing of the claim, it only left him the time which elapsed between its passage and May 31, 1883 (about eight weeks), the time limited in which to file it with the board of audit, and thus have the benefit of a transfer to the Board of Claims, and that this, as between citizens, did not give a reasonable time.

Also *held*, that the act of 1884, by which a few days over three months was allowed to a claimant in which to file his claim, did not provide a reasonable time.

Also *held*, that the Board of Claims had power to allow and was justified in allowing interest.

It appeared that while no steps were taken by claimant toward filing and presenting his claim until subsequent to the passage of the act of 1888, for most of the period he was engaged in trying to collect it by mandamus proceedings against the state comptroller, and that much of the delay in the prosecution thereof was caused by the non-action of the courts, which the claimant was powerless to prevent. *Held*, that the claim could not be characterized as stale.

(Argued May 31, 1892; decided October 4, 1892.)

APPEAL from award of the Board of Claims, made November 30, 1890, in favor of claimant for $59,754.09.

This was a claim arising out of a contract for legislative printing.

The facts, so far as material, are stated in the opinion.

*Charles F. Tabor* for appellant. The judgment entered against Comptroller Olcott, in the proceedings referred to, is not *res adjudicata* against the state as to any question involved before the Board of Claims. (*Redfield* v. *Windom*, 137 U. S. 664; *Boynton* v. *Blaine*, 139 id. 306; *People* v. *Barnes*, 114 N. Y. 317; *In re Ayres*, 123 U. S. 443; *Pennoyer* v.

*McConnaughty,* 140 id. 1; *Ferguson* v. *Crawford,* 70 N. Y. 256; *Davidsburgh* v. *K. L. Ins. Co.,* 90 id. 526; *Robinson* v. *O. S. N. Co.,* 112 id. 324; *State* v. *Porter,* 89 Ind. 260; *Reeside* v. *Walker,* 11 How. [U. S.] 290; *Bresler* v. *Butler,* 60 Mich. 40; *Weston* v. *Deane,* 51 Me. 461.) As to all the items of the claim for work done and materials, growing out of this contract, which had been performed and furnished before or after the alternative writ was granted, the judgment is a bar. (*Secor* v. *Sturgis,* 16 N. Y. 554; *Nathans* v. *Hope,* 77 id. 420; *Perry* v. *Dickerson,* 85 id. 347; *Lawrence* v. *Church,* 128 id. 330; *O'Beirne* v. *Lloyd,* 43 id. 250; *Lorillard* v. *Clyde,* 122 id. 45; *Belden* v. *State,* 103 id. 9.) The Board of Claims erred in holding that the claim filed here for work and materials was not included in the "lump sum" named in the contract. (Laws of 1846, chap. 24; Laws of 1847, chap. 254; Laws of 1859, chap. 437.) The questions growing out of this contract as to its proper construction are questions of law. (*Brady* v. *Cassidy,* 104 N. Y. 155.) It is, therefore, within the province of this court to examine the contract, and determine whether the construction given thereto by the Board of Claims was the proper one. (Laws of 1883, chap. 205, § 10; *Swift* v. *State,* 89 N. Y. 56; *Woodruff* v. *R. & P. R. R. Co.,* 108 id. 47; *Clark* v. *Devoe,* 124 id. 124.) The act of 1884, so far as it authorizes or empowers the Board of Claims to audit and allow the claim herein, is in violation of section 14 of article 7 of the Constitution. (*McDougall* v. *State,* 109 N. Y. 80; *Gates* v. *State,* 128 id. 227; *O'Hara* v. *State,* 112 id. 153; *U. S.* v. *Guthrie,* 17 How. [U. S.] 284; *People* v. *Hayt,* 66 N. Y. 607; *People* v. *Burrows,* 27 Barb. 93; *People* v. *Tremaine,* 29 id. 96; *People* v. *Board of Police,* 75 N. Y. 44; *People* v. *Turner,* 117 id. 240; *Bucklin* v. *Ford,* 5 Barb. 396; *Peck* v. *Randall,* 1 Johns. 178; *People* v. *Chapin,* 104 N. Y. 102.) In any event, the allowance by the Board of Claims of interest from January 5, 1880, upon the amount which was ultimately determined by the board to be due to the claimant, was error. (*Doyle* v. *St. James Church,* 7 Wend. 178; *Robinson* v. *Stewart,* 10 N.

Y. 197; *Smith* v. *Velie*, 60 id. 117; *McMaster* v. *State*, 108 id. 557; *Lewis* v. *State*, 96 id. 71; *Gates* v. *State*, 128 id. 227.) There was a settlement and payment in full of the claim against the state for the extra printing of 1877. (*Vedder* v. *Vedder*, 1 Den. 260; *Coon* v. *Knapp*, 8 N. Y. 402; *Swift* v. *State*, 89 id. 62; *McDonough* v. *Board of Managers*, 96 id. 460; *Danziger* v. *Hoyt*, 120 id. 190.)

*R. A. Parmenter* for respondent. Claimant was legally entitled to interest from the time of the breach of the contract by the state. (*Van Rensselaer* v. *Jewett*, 2 N. Y. 135; *Purdy* v. *Phillips*, 11 id. 406; *Dana* v. *Fiedler*, 12 id. 40; *Adams* v. *F. P. Bank*, 36 id. 255–261; *Mygatt* v. *Wilcox*, 45 id. 306–310; *McCollum* v. *Seward*, 62 id. 316–318; *De Lavallette* v. *Wendt*, 75 id. 579–582; *Supervisors* v. *Clark*, 92 id. 391–397; *Robbins* v. *Carll*, 93 id. 657; *Sanders* v. *L. S., etc., R. R. Co.*, 94 id. 642; *Sayre* v. *State*, 123 id. 297.) The former adjudication in the Supreme Court, possessing general and original jurisdiction, between the same parties, involving, as it manifestly did, the interpretation of the identical contract for legislative printing, and embracing in the issue the same classes of work and materials, is *res adjudicata* in the case at bar. (*People ex rel.* v. *Schoonmaker*, 19 Barb. 657; *People* v. *Stevens*, 71 N. Y. 549; *Rice* v. *King*, 7 Johns. 20; *Haskin* v. *Mayor, etc.*, 11 Hun, 436; *Embury* v. *Conner*, 3 N. Y. 522; *McWilliams* v. *Morrill*, 23 Hun, 162; *People* v. *Stevens*, 51 How. Pr. 235; *Smith* v. *Smith*, 79 N. Y. 634; *Perry* v. *Dickerson*, 85 id. 345; *Millard* v. *M. R. & T. R. R. Co.*, 86 id. 441; *Brown* v. *Mayor, etc.*, 66 id. 390; *Palmer* v. *Hussey*, 87 id. 303; *Newton* v. *Hook*, 48 id. 676; *Gales* v. *Preston*, 41 id. 113; *Blair* v. *Bartlett*, 75 id. 152; *Dunham* v. *Bower*, 77 id. 76–79; *Leavitt* v. *Wolcott*, 95 id. 212; 1 Greenl. on Ev. §§ 523, 524, 528; *Lahr* v. *M. E. R. Co.*, 104 N. Y. 287; *People ex rel.* v. *Carter*, 119 id. 559; *Moore* v. *E. R. R. Co.*, 126 id. 672.) The practice pursued in the former adjudication was in all respects regular and pursuant to the statute and adjudged

cases, and the Supreme Court was a court of competent juris-
diction for that purpose. (2 R. S. [Edm. ed.] 608, § 55;
*People* v. *Ransom*, 2 N. Y. 490; *The King* v. *M. P. Co.*, 5
Eng. Com. Law, 266; Wood on Mandamus, 36, etc.; *People*
v. *Supervisors, etc.*, 28 N. Y. 112; *People* v. *Supervisors,
etc.*, 15 Barb. 607; *People* v. *Supervisors, etc.*, 14 id. 52; *C.
Bank* v. *Canal Comrs.*, 10 Wend. 27; *People* v. *Baker*, 35
Barb. 105.) As between the parties here, the said former
adjudication is *stare decisis*, if not *res adjudicata*, on the legal
proposition that the Supreme Court, through its writ of man-
damus, possessed concurrent jurisdiction with the board of
audit, now abolished, and with the Board of Claims over
private claims against the state arising out of contract with
state officers entered into pursuant to law. (*Hosack* v. *Rogers*,
25 Wend. 313, 354, 355; *Hardenburg* v. *Crary*, 50 Barb. 32,
34; *Palmer* v. *Hussey*, 87 N. Y. 303, 306, 307; *N. Y. &
H. R. R. Co.* v. *Ketchum*, 3 Keyes, 364; *Bell* v. *Day*, 32 N.
Y. 185, 186; *Carroll* v. *Carroll*, 16 How. [U. S.] 287; *Cohens*
v. *Virginia*, 6 Wheat. 399; *Alexander* v. *Worthington*, 5 Md.
488, 489; *Rockhill* v. *Nelson*, 24 Ind. 424; *Lahr* v. *M. E.
R. Co.*, 104 N. Y. 287.) The statute of 1888, under which
this claim is filed with the court below, is constitutional.
(*People* v. *Stevens*, 71 N. Y. 527; *Corkings* v. *State*, 99 id.
491; *Cole* v. *State*, 102 id. 48; Laws of 1885, chap. 238;
*McDougall* v. *State*, 109 N. Y. 73, 80; *O'Hara* v. *State*, 112
id. 145.) Nor is this claim, or any part of it, open to the
technical objection on behalf of the state that the claimant
could not legally split up his demand and maintain separate
actions or proceedings against the debtor state. (*Mills* v. *Gor-
man*, 3 Keyes, 40; *McIntosh* v. *Lown*, 49 Barb. 557; *Secor*
v. *Sturges*, 16 N. Y. 548, 554; *E. & N. Y. C. R. R. Co.* v.
*Patrick*, 2 Abb. Ct. App. Dec. 72; *Zimmerman* v. *Erhard*,
83 N. Y. 74, 78; *Matthews* v. *Hope*, 77 id. 420.)

PECKHAM, J. The respondent entered into a contract with
the secretary of state and comptroller to do certain printing
of a public nature for the sum of $47,500 for each of two

legislative sessions.  During the first session he did certain printing which he claimed did not come within the description of that for which he was to receive an annual compensation in gross, but that it was provided to be paid for at special rates by another provision of the contract.  The claim he made for payment upon such a basis was disputed by the officers of the state.  For the purpose of compelling payment of his claim the respondent commenced proceedings by mandamus against the late Comptroller Olcott, and the result thereof was the procurement and entry of a judgment against the comptroller, directing him to draw his warrant for the payment of the work as claimed by the respondent.  The judgment was subsequently paid and satisfied of record.

The work for which the respondent claims compensation herein is of the same nature as that for which he was awarded the mandamus, and was performed subsequent to the time when the proceeding to procure the writ was inaugurated.  It was necessary in the mandamus proceeding, before the writ could be awarded, to give such a construction to the contract in question as would exclude the claim of the respondent from that class of work which he was bound to perform for the gross sum mentioned.  That construction was therein given and a judgment in favor of the respondent followed thereon. He now claims that this judgment is *res adjudicata*, and estops the state from contending for any other construction of the contract than the one already given in the mandamus proceeding.  The comptroller was proceeded against in that matter as an officer who was neglecting to perform an official duty, and if it were true that he was guilty of that neglect, he was not in any sense representing the state therein.  The proceeding was in the name of the people upon the relation of the respondent against a public officer, while this proceeding is permitted by legislative authority, and is one by the respondent as an individual and against the state in its corporate capacity.

To hold the state estopped by the conclusive character of a judgment against one of its officers in a case like this, would

be to create an estoppel against the state by a suit or proceeding to which it was not a party, and where it had not granted leave to any one to sue or implead it except by a procedure not taken in the mandamus matter. We are not impressed with the validity of the claim of the respondent upon this question, but in the view we take of the contract that question becomes unimportant, and we do not, therefore, decide it.

We are of the opinion that the contract has been properly construed by the Board of Claims in this proceeding. It may be that the language used in the first part of the contract is of such wide scope as to include all kinds of printing for which the state has ever been in the habit of paying. This language is capable of such a construction as to place it in the power of the legislature to bankrupt the person who had made the contract, if all the printing which might be called for under it were to be included in the gross sum mentioned.

After the agreement to do the printing of each legislative session for a sum in gross, and after the details regarding it were provided for generally in the contract, this further proviso was added: "It is further understood and agreed that in the event of an extra session of the legislature the said work shall be done and materials furnished for the prices stated in detail in the alternative bid annexed; *and the same prices shall also be paid for any work and materials ordered, not for the use of the legislature.*" It is claimed on the part of the respondent that the words above italicized apply, as is plainly stated, to "any work and materials ordered, not for the use of the legislature," while the counsel for the state contends that those words are to be limited as applying to work and materials ordered at the extra session, and not for the use of the legislature.

Extra sessions of the legislature are comparatively of rare occurrence. Still, when they are convened, it is, of course, necessary that printing should be done for them. The parties evidently did not contemplate that the printing at an extra session should be included in the gross sum of $47,500, and hence it was provided that such printing should be done for

the prices stated in detail in the alternative bid annexed to the contract. Then follows the provision by which any work and materials ordered, *not for the use of the legislature*, are to be paid for at the prices stated in the alternative bid. The words actually used are broad enough to cover printing ordered, not for the use of the legislature, at a regular as well as at an extra session. It seems to us that the broader construction is not only called for by the language actually employed, but that the circumstances themselves point to such construction as the natural and proper one.

By the use of this language some limitation is put upon the power of the legislature to order printing under the contract and to be paid for by payment of the gross sum mentioned. To restrict the language to printing at an extra session is to do away with almost all its usefulness, because, as has been stated and as is well known to all, extra sessions are of quite rare occurrence, and the power to order printing not for the use of the legislature could be exercised at each regular session, to the possible financial destruction of the public printer, unless there were some such safeguard interposed as is to be found in this limitation if it apply to regular as well as extra sessions. It is said that in the original contract there is a comma instead of a semicolon after the word "annexed" in the above quotation from the contract relating to the extra session and the prices to be paid for printing, so that the language and punctuation would be that the "work shall be done and materials furnished for the prices stated in detail in the alternative bid *annexed*, and the same prices shall also be paid for any work and materials ordered, not for the use of the legislature." We think the presence or absence of the semicolon or the comma is not of the slightest consequence upon this question of construction. The language used and the surrounding circumstances both, as we have said, concur in making it entirely plain that the gross sum applies to printing for the use of the legislature, and that prices mentioned in the alternative bid apply to all work ordered at regular or extra sessions which was not for the use of the legislature.

It is true that under the terms of the contract as it stands the contractor would be bound to do " extra printing " which might be ordered for the use of the legislature by an act, joint rule or concurrent resolution, which extra printing would be included in the gross sum provided to be paid the contractor. This power might be so used as to perhaps financially ruin the contractor.

The fact that such power existed in regard to one class of printing where it was difficult to limit the amount, might and naturally would induce caution in placing still more power in the hands of a reckless or thoughtless majority. What was generally required for the use of the legislature in the way of printing was also well known, and the contractor might reasonably rely on the honor and sense of fairness of the legislature not to order extra printing to a greater amount than customary or usual. But for printing not for the use of the legislature there naturally might not be such a regular and well established custom, because the things to be printed might vary so in each year that no past year could furnish any reliable guide to the requirements of any future year. Hence the importance of providing for a separate compensation and upon a different plan for printing not for the use of the legislature from that which was provided for under the gross sum. These considerations strengthen the view we take as to the construction of the contract under discussion.

It is, however, urged upon the part of the state, that if the construction of the contract as contended for by the respondent be correct, yet the claim, if between citizens, would be barred by the Statute of Limitations, and hence the Board of Claims had no legal power to make the award it did.

In 1874 an amendment to the 7th article of the constitution was adopted by the people. It is section 14 of that article. The material portion of the amendment reads as follows : " Neither the legislature, canal board, canal appraisers, nor any person or persons acting in behalf of the state, shall audit, allow or pay any claim which, as between citizens of the state, would be barred by lapse of time."

It is not entirely clear what is the meaning of this phrase, "which as between citizens of the state, would be barred by lapse of time." As was said by RUGER, Ch. J., in *O'Hara* v. *State* (112 N. Y. 146), there is little analogy between the position of citizens with regard to the enforcement of their legal rights among themselves, and the position of a citizen with regard to the enforcement of his claim against the state. Between citizens the courts are at all times open and each can at any time resort to some legal forum for the enforcement or protection of his claim or right, as against any other citizen.

It is different in regard to the state. Unless with its consent it cannot be sued, and in giving consent it may attach such conditions to the right to sue as may to it seem proper. The counsel for the state concedes what would also seem quite plain, that if there never had been any tribunal created by the state before which the claimant could have pressed his claim, the Statute of Limitations would not have commenced to run, because it would have been absurd to hold there was a statute of limitations within which a claim must be sued when there had been neither a person to be sued, nor any court or tribunal before which the state could be summoned to answer the suit. (*Sanford* v. *Sanford,* 62 N. Y. 146.) It has been urged that under this amendment the court should look at the claim in the same light as if it were one in favor of one citizen against another, and if in the light of all the legislation regarding it, the claim would as between such citizens be outlawed, then it must be so regarded when presented against the state and the constitutional provisions preventing its audit or allowance must have full force and effect. It has also been urged that the correct view is to regard the general statutes of limitation which actually existed as between citizens during the running of the time since the cause of action accrued, and if by those statutes the claim would not be outlawed it must be regarded as valid so far as that question is concerned, irrespective of any special legislation which might affect the particular claim.

A proper presentation of the subject requires an examination of the statutes which have been passed as to the enforce-

ment of claims against the state. By chapter 444 of the Laws of 1876, the state board of audit was created, whose duty it was to hear without any limitation whatever as to the time when they accrued, all private claims and accounts against the state, with certain exceptions not here material. This claimant from the time of the accruing of his cause of action in November, 1879, to May 30, 1883, a period of three years and six months, could have filed his claim with that board. This right to file his claim with the board of audit remained until the board went out of existence on the last above-named day by virtue of the passage of the act which created in its place the Board of Claims. This latter board was created by chapter 205 of the Laws of 1883, and among other things jurisdiction was given the board to hear all claims against the state, which should accrue two years prior to the time when such claim was filed. As the claim of the respondent accrued in 1879, more than two years prior to any possible filing with the Board of Claims, this act gave no power to file the claim with that board and only left to the claimant the time which elapsed between the passage of the act, April 7, 1883, and the 31st of May, 1883, in which to file it with the state board of audit, and to thus obtain the advantage of the transfer to the Board of Claims of all claims pending before the board of audit on the 31st of May, 1883, which the act provided for.

After the passage of this act of 1883, the only opportunity left to the claimant by which he could obtain any hearing from any tribunal was to file his claim with the state board of audit before it was abolished, and thus either obtain a hearing by that board or a transfer of the claim to the Board of Claims. This right to file his claim before the board of audit was thus cut down to a period of seven weeks and five days from the passage of the act of 1883, although before its passage the right was not limited by any period of time. If the claim were not filed with the state board of audit before it was abolished, then from that period up to March 25, 1884 (the time when the statute amending the act of 1883 was passed), there was

no forum to which the claimant could resort for the purpose of impleading the state and obtaining a hearing upon his claim. And only three years and five months had elapsed from the time the cause of action accrued up to the time when by statute the right to file his claim before any tribunal whatever was at once limited to a period of less than eight weeks from the passage of such statute.

The act passed March 25, 1884 (Chap. 60), amended the prior act of 1883 (Chap. 205), and provided that the Board of Claims might have jurisdiction of such claims as were formerly cognizable by the state board of audit provided such claims should be filed on or before July 1, 1884. This act limited the time in which the respondent could file his claim to a few days over three months, and if not filed within that time the effect of a failure was of course the denial of any relief thereafter.

From the time when the claim of the respondent accrued in November, 1879, up to July 1, 1884, a period of but four years and eight months had elapsed, and by the general laws of the state as between citizens no statute of limitation then barred the prosecution of such claim.

The claimant, in fact, did not file his claim either with the state board of audit nor did he avail himself of the privilege granted by the act of 1884, by filing his claim with the Board of Claims prior to July first, or at all. The reason is given, but it is immaterial upon this question. From July 1, 1884, to June 9, 1888, there was no tribunal to which the claimant could present his claim against the state and demand or receive a hearing thereon. In June of the last-named year the legislature passed the act which reads as follows:

"§ 1. The Board of Claims is hereby authorized to hear, audit and determine the claim or claims of Jerome B. Parmenter against the state for extra work, materials and printing done, furnished and performed by him, as the legislative printer, under his contract for legislative printing, made, executed and entered into by the then secretary of state and comptroller, on behalf of the state and by the said Jerome B. Parmenter, on

his own behalf, bearing date the 8th day of February, 1876, and running for the term of two years from and after the date of said contract, and to make an award therein.

" § 2. This act shall take effect immediately."

If this enactment were a valid exercise of legislative power, then the board had jurisdiction to determine the question as to the validity of the respondent's claim.

The counsel for the state, however, assails it upon the ground that it in effect permits the Board of Claims to revive and audit a claim which, as between citizens of the state, would be barred by lapse of time, and hence it is urged that the act is in violation of the provision of the Constitution already cited. Although six years had not elapsed from the time when claimant's cause of action accrued up to July 1, 1884, when the right to file his claim under the general law was summarily and finally taken from him, yet it is now urged that the limitation of the right to file his claim is in effect a statute of limitation, and that if it had been enacted relative to the claims of citizens between each other, the legislation would have been valid, although seriously curtailing the period in which actions might otherwise have been commenced. It is further urged that as the legislation would be valid between citizens, the claim against the state became outlawed July 1, 1884, and the legislature had no right in 1888 to directly or indirectly revive, or audit, or allow it.

The question which first arises is as to the force of the argument of counsel for the state, when he urges that this legislation, if enacted, regarding claims between citizens, would be a valid exercise of legislative power. He urges that the construction of the language of the constitutional amendment first above stated is the true one, and that the special legislation applicable to a claim against the state must be regarded as having been enacted relative to the general statutes of limitation as between citizens. Statutes which bear only upon the time in which to bring actions have been held to affect only the remedy upon a contract, as distinguished from its obligation, provided a reasonable time were left in which a party

might commence his action after the passage of the statute. (*Reid* v. *Supervisors of Albany*, 128 N. Y. 364, 373; *People* v. *Turner*, 117 id. 240; *Terry* v. *Anderson*, 95 U. S. 628 at 632, and cases cited.)

Viewing the act of 1883 at first separately from that of 1884, and we see the effect is to leave claimant a period of but seven weeks and five days in which to file his claim, or in other words to commence his action against the state, although before its passage there was no limitation whatever in point of time within which this act could be performed. The act in this view it is claimed should be regarded as affecting the legal rights of citizens as between themselves. Would a statute which cut down the right to commence an action from a period without limitation, to a period of seven weeks and five days from the passage of the act, give a reasonable time to a plaintiff in which to commence his action after the enactment of the statute?

The question of what is a reasonable time must be answered in view of all the facts surrounding the passage of the act and of which a court would take judicial notice. The reasonable time is not to be decided with reference to the bare fact as to whether sufficient time were allowed for a swift individual to make out the legal papers and setting out at once, find and serve upon the defendant the process necessary to commence the action.

It is to be noted that in the case of the alteration of a statute as to limitations a claimant must be held to have known not only the law existing at the time of the creation of the liability, but he must be held to have become acquainted with the fact of the passage of a statute which alters that law to his cost. Within what time shall such knowledge be imputed to him and how long a time thereafter would constitute a reasonable time for him to act in? Immediate knowledge, perhaps, ought not to be imputed to him upon such a question. Although knowledge of the law is frequently and for the purposes of justice to be imputed to an individual, yet where the case is one in which to decide what is a reasonable time to

leave for the commencement of an action upon a cause thereof already accrued, but under the law as altered, the question as to when knowledge of the passage of the act effecting the alteration should be imputed to the citizen is one of the factors in deciding the general question. This question of reasonable time cannot of course form the subject of an inquiry in the case of each individual to be affected by the alteration of the law. It must be decided by the court as a question of law and upon a general consideration of all facts in regard to which courts will take judicial notice. Before answering the question in this case it will be well to examine what has been said by other courts upon the matter, even though the express point has not been actually decided in all cases. It will give some idea of the views other judges have taken of the subject. In *Hawkins* v. *Barney's Lessee* (5 Peters, 457), the act reduced the limitation period from twenty years, under the original Virginia statute, to seven years under the statute of Kentucky, and it was held a valid act. The contention in this case was that Kentucky was bound to continue the same law of limitations so far as regarded the lands which were once under the jurisdiction of Virginia, as obtained in the latter state at the time of the compact between her and Kentucky. This contention was not upheld. The case, although it has been heretofore cited as authority on this point, has as it seems to me very little application.

In *Jackson* v. *Lamphire* (3 Pet. 280), the act of the legislature of New York (Chap. 51 of the Laws of 1797, passed March 24 of that year) was claimed to be void as impairing the obligation of contracts. It rendered a certain award made by commissioners to quiet the titles to land in Onondaga county, a bar to any action not commenced within three years after the award. The act was held valid in any view considered as an act of limitation as to existing rights or as a Recording Act.

In *Sohn* v. *Waterson* (17 Wall. 596), the statute gave, as construed by the court, two years from its date in which to commence action upon existing causes of action at the time of its passage, and it was held sufficient.

In *Call* v. *Hagger* (8 Mass. 423), an act limiting the commencement of suit to a period of one year subsequent to the passage thereof in cases where a cause of action had already accrued, was thought not to be unreasonable by the court, but the statute was nevertheless construed as inapplicable to a cause of action which had accrued before its passage.

In *Krone* v. *Krone* (37 Mich. 308), the statute limited the time as to existing causes to one year from its passage, and it was held reasonable.

In *Berry* v. *Ransdall* (4 Met. [Ky.] 292), it was held that a statute limiting the time to commence action on existing causes of action to thirty days, was unreasonable and invalid.

In *Lewis* v. *Harbin* (5 B. Mon. [Ky.] 564, 571), the court, per EWING, Ch. J., said that if a statute should limit the right to commence an action upon a cause thereof existing at the time of its passage to five months thereafter, "a time scarcely sufficient to enable even lawyers of the community to learn that such a law had passed, such an enactment would have shocked the moral sense of mankind, as unjust and iniquitous."

Again, in *Pearce's Heirs* v. *Patton* (7 B. Munroe [Ky.], 162, 168), the same court said that "six months is not the time prescribed for the suit, but seven years, and if it was, we should hardly regard it as a reasonable time to be constitutionally available to bar the remedy as a mere act of limitation."

In *Pereles* v. *City of Watertown* (6 Biss. 79), HOPKINS, J., who was United States judge for the western district of Wisconsin, held that a limitation of one year from the passage of the act, as applied to existing municipal bonds issued for negotiation in a foreign market, was clearly unreasonable and unconstitutional. The learned judge conceded that, so far as the statute might be applicable to causes of action accruing after the passage of the statute, the legislature had absolute power to fix the time within which an action might be brought, as in such a case he said the parties may be supposed to have contracted with reference to it, but a very different rule was held to apply in regard to statutes of limitation intended to affect existing causes of action, and the learned author (Cooley

on Constitutional Lim. [5th ed.] 451), says statutes of this kind must allow a reasonable time, and if the period is manifestly too short, the courts will hold the statute invalid, as in such case constituting a denial of justice.

In our own court, the case of *Rexford* v. *Knight* was decided in 1854, and reported in 11 N. Y. 308. The limitation of one year in the case of a claimant whose land had already been appropriated by the state, in which to exhibit his claim to the canal appraisers for damages, was held sufficient. Judge Johnson, in the course of his opinion, said, the court, in order to pronounce the law unconstitutional, must see that the limitation is so short that the unmistakable purpose and effect of the law is to cut off the right of the party, and not merely to limit the time in which he may begin to enforce it.

This language, it must be remembered, is used with relation to a statute which in fact gave a full year from the time of its passage in which to exhibit the claim.

A far different case from the statute under consideration here.

The court will take judicial notice of the fact that there was, in regard to the statutes under consideration in this case, no grave or public exigency in existence which appealed to the legislature, in behalf of the whole people and for the public interests, for the enactment of a statute curtailing, to the shortest possible legal time, the right to commence actions which, up to the passage of the act of 1883, was unlimited.

The case of *Terry* v. *Anderson* (95 U. S. *supra*) involved such a public exigency, and the time allowed in that case was from March 16, 1869, to January 1, 1870, almost ten months.

In that case, Wait, Ch. J., in his opinion, admitted that the time was short, but he said the business interests of the active people of the state had been overwhelmed by a calamity common to all, and society demanded that extraordinary efforts should be made to get rid of old embarrassments, and to permit a reorganization upon the basis of the new order of things. Hence, it was held in that case there had not been such an abuse of legislative power as to justify judicial interference.

It was the case of legislation in one of the southern states after the war, and it was enacted for the purposes above mentioned. Nothing of the kind exists here.

The cases cited are, I think, sufficient to enable us to come to an intelligent opinion regarding legislation of this character as between citizens.

If the curtailment of the right to file a claim is to be regarded as the same in effect as the shortening of a statute of limitation, I think there can be no doubt that in such a case as this an act which leaves a period of less than eight weeks after its passage in which to commence an action which right was before unlimited as to time, would not leave a reasonable time in which to learn of the passage of the statute, elect what course to pursue, and having made the election, to carry out the same.

The subsequent passage of the act of 1884, by which a few days over three months after its passage was permitted to a claimant in which to file his claim, would not of itself, in the case between citizens, provide a reasonable time, and it ought not to be so regarded when viewed in connection with the act of 1883. The latter act would not, as I have said, leave a reasonable time as between citizens, and hence one who had not availed himself of its provisions could not be cut off from his rights under the general statute by an act which gave him but three months thereafter in which to file a claim which, when it accrued, was a right unlimited in time by any statute whatever.

I will assume here that there is no absolute right to sue the state or to file a claim under any law passed by the legislature that may not be cut off by a statute at any time and upon a moment's notice, and hence, when I speak of the time left in which to file a claim and of the rights of the claimant, I do so only upon the assumption that this legislation is to be regarded in the same light for this purpose as if it were the curtailment of the right of a citizen to commence his action against a citizen, and in that case the question would be whether the act left a reasonable time in which to make his

election and commence his action. I think these acts do not leave it, and hence would be invalid.

If, upon the other hand, we regard the language of the constitutional provision as meaning that the general laws limiting the rights of citizens to commence and maintain similar kinds of actions as between themselves, are to be referred to for the purpose of determining the question of limitation irrespective of the particular legislation affecting the right to file the particular claim as against the state, the same result is arrived at. During the time between the accruing of respondent's cause of action in November, 1879, and the 1st day of July, 1884, the law as between citizens gave six years in which to commence an action upon a claim of this kind after the cause thereof had accrued. At the time when the claimant's right to file his claim was, by the existing law, finally barred, viz., July 1, 1884, but four years and eight months had elapsed, and hence at that time the bar of the statute in regard to citizens as between each other would not attach for one year and four months. After July 1, 1884, there was no tribunal before which the claimant could be heard, and the statute thus deprived him of a year and four months during which he would as between citizens have had the right to commence and maintain this action.

By the general law applicable to citizens between themselves the cause of action of one who has not had six years in which to commence its prosecution is not outlawed, and hence this claim as between such citizens would not be outlawed.

The time within which, by the act of 1884, claims might be filed in the Board of Claims is merely of statutory authority, and could be lengthened by subsequent authority of the same nature. The only constitutional provision is that which forbids the auditing or allowance of any claim which as between citizens of the state would be barred by lapse of time. The legislature, therefore, had the right to enlarge the time within which the claim might be filed in any particular case, provided it did not itself audit, or permit any other body to audit or allow a claim which as between citizens was already outlawed. (*Cole* v. *State*, 102 N. Y. 48, 53.)

The claim of the respondent was not outlawed at the time of the passage of the act of 1888, but from July 1, 1884, up to the passage of that act there was no cibunal to hear the claim, because the legislature had so enacted. By the passage of the act of 1888, the prohibition as to the filing of the claim with the Board of Claims was withdrawn, and leave to file it was given. This, as we have seen, the legislature had the power to do, and it exercised it in this case. (*Cole* v. *State, supra.*)

Our conclusion is that by either construction of the language of the constitution the act of 1888 was a valid act and authorized the Board of Claims to hear and decide upon the claim of the respondent. It is unnecessary to here decide which is the true construction.

The right to award interest upon this claim is also attacked by counsel for the state.

We think the board did not overstep its jurisdiction or commit any error in awarding it. The claim was one which, in its nature, would bear interest from the time when it accrued, and it was proper for the board to award it.

It is also objected that the claim is part of a whole one which could not be split up, and that the first proceedings by mandamus for the payment of the printing done at the first session of the legislature is a bar to the presentation of this claim. The mandamus proceedings were taken before the work under this claim was commenced. They related to the printing done at the first legislative session under the contract, while this claim relates to that which was done at the second session under the same contract. They were so far separate that payment for the work done in the first session could properly be collected before the commencement of the work in the second session, and I do not think that the collection of the money by legal proceedings for the first session's work, constituted a bar to the collection of the money in payment for that which was done for the second session.

While this claim is spoken of as a stale one, we think the record shows that it is not of that character. Although no

steps were taken towards filing and presenting it to the State board of audit while that board was in existence, or to the Board of Claims which succeeded it, until a time subsequent to the passage of the act of 1888, yet it appears the claimant was not in any respect sleeping upon his rights during that time. For most of that period he was engaged in trying to collect it by proceedings by mandamus against the comptroller, and much of the delay in its prosecution was caused by the non-action of the courts under circumstances which the claimant was powerless to prevent or control.

There is substantially no defense upon the merits under our construction of the meaning of the contract. The work was done, as alleged, and at prices mentioned and provided for in the contract, and the state has had the benefit of it but has never paid for it.

We have looked at all the other questions raised by the learned counsel for the state, but we think that no error prejudicial to the state has occurred in their decision.

We are, therefore, of the opinion that the award of the Board of Claims should be affirmed, with costs.

All concur, except O'Brien and Maynard, JJ., not sitting.
Award affirmed.