The Oswego and Syracuse Railroad Company et al.,
  Respondents, v. State of New York, Appellant.

Eminent domain — Barge Canal Act — validity of provision
of act providing that state pay for new bridges required
by new location of the canal — when railroad company required
to build new bridge in place of an existing bridge may present
and prosecute claim for cost thereof — action not barred by
lapse of time when tribunal was open to claimant for two
years only.

1. The provisions of the Constitution that neither the credit nor the
money of the state shall be given or loaned to or in aid of any associa-
tion, corporation or private undertaking (Const. art. 8, § 9) do not
prohibit the recognition of claims which have their roots in equity
and justice. Where the legislature, by action looking to the future,
has defined the terms of equity and justice upon which it will go into
an enterprise, it has a wide discretion, and courts will not revise its
judgment unless there has been manifest abuse.

2. The Barge Canal Act (L. 1903, ch. 147, § 3) provides that
" new bridges shall be built over the canals to take the place of existing
bridges wherever required, or rendered necessary by the new location
of the canals." The superintendent of public works notified the
Delaware, Lackawanna and Western Railroad Company that its
bridge across the Seneca river must be changed to accommodate the
plans for the Oswego canal; that its rights were subject to the rights
of the state in the improvement of navigation; and that it must make
the changes " as indicated by the blueprint of plans," and make them
at its own expense. The existing bridge was, therefore, destroyed,
under protest by the railroad company, saving its contention that the
state should bear the expense, and a new one constructed. This
claim has been filed for the recovery of the cost. Held, that on the
refusal of the state to construct the bridge, the claimants had a right to
construct it and charge the state with the expense. The Constitution
furnishes no barrier to such reimbursement. The fact that there was
an express reservation by the state of the right to destroy the bridge
in the improvement of navigation does not destroy the equity of the
claimant's position. (Lehigh Valley R. R. Co. v. Canal Board, 204
N. Y. 471, 476, followed.)

3. This claim is one for compensation or damages for or on account
of the appropriation of property within the meaning of chapter 640
of the Laws of 1915 and chapter 420 of the Laws of 1916, extending the
time within which claims might be filed against the state. These

statutes do not violate the command of the Constitution that " neither the legislature, canal board, nor any person or persons acting in behalf of the State, shall audit, allow or pay any claim which, as between citizens of the State, would be barred by lapse of time." (Const. art. 7, § 6.)

4. A cause of action is not barred by lapse of time as° between citizens of the state unless there exists a tribunal of competent jurisdiction to which they may repair. A like rule is applicable as to claims against the state. In the present case the tribunal was open to the claimant for only two years (Code Civ. Pro. § 264), while a citizen having a claim against another citizen for the value of appropriated property is not barred until six years have gone by. Since this claim would not be barred as against a citizen, it should not be barred as against the state.

5. In disposing of later controversies, courts do not hold themselves bound to the full extent by earlier judgments, when a " question might have been raised, but passed *sub silentio.*" (*McDougall* v. *State of N. Y.,* 109 N. Y. 73, and *Gates* v. *State of N. Y.,* 128 N. Y. 221, explained.)

*Oswego & Syracuse R. R. Co.* v. *State,* 186 App. Div. 384, affirmed.

(Argued April 21, 1919; decided May 20, 1919.)

APPEAL from a judgment entered February 8, 1919, upon an order of the Appellate Division of the Supreme Court in the third judicial department, which reversed a judgment of the Court of Claims dismissing the plaintiffs' claim upon the merits and directed judgment absolute in favor of plaintiffs.

The facts, so far as material, are stated in the opinion.

*Charles D. Newton, Attorney-General (Edmund H. Lewis* of counsel), for appellant. The 1901 bridge, which is alleged to have been appropriated, was constructed under a revocable license, which was properly terminated upon due notice. (*F. P. Bridge Co.* v. *Smith,* 30 N. Y. 44; *Champlain S. & S. Co.* v. *State,* 142 App. Div. 94; 205 N. Y. 539; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Walsh,* 211 N. Y. 90; *Eckerson* v. *Crippen,* 110 N. Y. 585; *Eggleston* v. *N. Y. C. & H. R. R. R. Co.,* 35 Barb. 162; *Bunke* v. *N. Y. Telephone Co.,* 110

App. Div. 241; *Fulton L., H. & P. Co.* v. *State*, 200 N. Y. 400; *Lewis B. P. O. C. Co.* v. *Briggs*, 198 N. Y. 287; *U. S.* v. *Chandler-Dunbar W. P. Co.*, 229 U. S. 53.) The construction of the Barge Canal Act which claimants invoke violates section 9 of article 8 of the State Constitution when applied to this claim. (*Smith* v. *People*, 47 N. Y. 330; *Matter of Rouss*, 221 N. Y. 81; *Bush* v. *Board of Supervisors*, 159 N. Y. 212; *Matter of Green*, 166 N. Y. 485; *People ex rel. Dady* v. *Prendergast*, 144 App. Div. 308; 203 N. Y. 1; *Matter of Jensen*, 44 App. Div. 509.) The Court of Claims was without jurisdiction to determine this claim. (*Buckles* v. *State*, 221 N. Y. 418.) The alleged claim became barred by the general Statute of Limitations on March 27, 1914, more than two years before the claim was filed. (Code Civ. Pro. § 382, subds. 1, 3; *Gates* v. *State*, 128 N. Y. 221; *McDougall* v. *State*, 109 N. Y. 73.)

*Douglas Swift* and *W. S. Jenney* for respondent. The state was obligated under the Barge Canal Act to bear the expense of rebuilding the 1901 bridge. (*L. V. R. R. Co.* v. *Canal Board*, 146 App. Div. 151; 204 N. Y. 471; *People* v. *N. Y., O. & W. R. R. Co.*, 133 App. Div. 476; *N. Y. C. & H. R. R. R. Co.* v. *State*, 37 App. Div. 57; 177 N. Y. 577; *People* v. *O'Brien*, 111 N. Y. 1; *Matter of N. Y. Electric Lines Co.*, 201 N. Y. 321.) No method of appropriation being prescribed in the statute, any actual appropriation of the bridge or clearance was sufficient to charge the state with liability for damages. (*Van Alstine* v. *Belden*, 41 App. Div. 123; 161 N. Y. 661; *Watson* v. *Empire Engineering Co.*, 77 Misc. Rep. 543; *Regina* v. *Treasury*, 20 L. J. Q. B. 312; *Jones* v. *Swart*, 1 T. R. 44; *United States* v. *Goldenburg*, 168 U. S. 95; *Fulton L., H. & P. Co.* v. *State*, 200 N. Y. 400.) The Court of Claims had jurisdiction to hear and determine this claim. (*L. 1915*, ch. 640; *Cayuga Co.* v. *State*,

23

153 N. Y. 279; *People ex rel. Essex Co.* v. *Miller,* 181 N. Y. 439; *McDougall* v. *State,* 109 N. Y. 73; *Gates* v. *State,* 128 N. Y. 221.)

CARDOZO, J.   In 1848 the Oswego and Syracuse Railroad Company, then engaged in the construction of its road, built a bridge across the Seneca river near the village of Baldwinsville.   The road was thereafter leased to the Delaware, Lackawanna and Western Railroad Company during the life of the lessor.   The Seneca river at that point was a part, though a minor one, of the canal system of the state.   The improvement, authorized in 1836 (L. 1836, ch. 303), was known as the Seneca River Towing Path.   The first bridge was destroyed by fire in 1879, and was thereupon replaced by another in the same location.   The construction of a third bridge became necessary in 1900.   At that time there was in force a statute, passed in 1894, which required a railroad constructing its road over any canal or feeder belonging to the state, or within ten rods thereof, to obtain the written permission of the superintendent of public works (Canal Law, L. 1894, ch. 338, sec. 25; afterwards amended by L. 1902, ch. 340, and, as amended, re-enacted in sec. 35 of the present Canal Law; Consol. Laws, ch. 5). His permit was to contain " such condition, directions and instructions as in his judgment the free and perfect use of any such canal or feeder may require."   The Delaware, Lackawanna and Western Railroad Company applied under this statute for authority to reconstruct its bridge.   The permit granted was subject to conditions: " The Superintendent of Public Works reserves the right at any time to revoke and annul this permit and cause said Delaware, Lackawanna & Western Railroad Co. to remove said bridge at its own cost and expense from the limit of ten rods from said Oswego Canal, also the right on the part of the State of re-entry and pre-occupancy of such lands covered by this permit, as the free and

perfect use of said canal at any future time may require, or as may be necessary for making any repairs, improvements or alterations in the same." The railroad accepted this permit, and agreed to abide by its conditions. In 1901 the bridge was built. The clearance under five of its spans was seven and one-half feet. The clearance under the remaining span was fourteen feet and three inches. Its form and dimensions were then adequate for the needs of navigation.

A change became necessary with the construction of the barge canal. The Barge Canal Act (L. 1903, ch. 147) prescribes a minimum width of 75 feet for the prism of the canal, and a minimum clearance of $15\frac{1}{2}$ feet between all fixed bridges and the water. The bridge of 1901 did not answer these requirements. It had to be destroyed, therefore, and another erected in its place. The statute provides that "new bridges shall be built over the canals to take the place of existing bridges wherever required, or rendered necessary by the new location of the canals" (Barge Canal Act, L. 1903, ch. 147, sec. 3). This meant that the new bridges were to be built at the expense of the state. We so held in *Lehigh Valley R. R. Co.* v. *Canal Board* (204 N. Y. 471). Until that decision, there was doubt where the burden ought to rest. Those in charge of the building of the canal tried to cast it upon the railroads. In 1908 the Superintendent of Public Works notified the Delaware, Lackawanna and Western Railroad Company that its bridge must be changed to accommodate the plans for the canal; that its rights were subject to the rights of the state in the improvement of navigation; and that it must make the changes "as indicated by the blue-print of plans," and make them at its own expense. In July, 1908, the railroad company answered that it had asked the opinion of counsel concerning its duty in the premises. He had stated that he was unable to answer the question in advance of a determination by the courts. " He also

advises, however, that we comply with the order of the Superintendent of Public Works, under protest, saving our contention that the State should bear this expense, presenting our claim for the expense incurred in connection with the reconstruction of our bridge to the State Board of Claims or the courts." The existing bridge was, therefore, destroyed, and a new one constructed. This claim has been filed for the recovery of the cost.

At the threshold stands a question of constitutional power. " Neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking " (Constitution, art. 8, sec. 9). The state finds in this command a barrier to reimbursement. In the case of the Lehigh Valley Railroad Company, the same barrier was interposed (*Lehigh Valley R. R. Co.* v. *Canal Board, supra*). The court found it unreal. We did not deny the power of the legislature in the improvement of navigation to tear down bridges and other obstructions without requital for resulting loss (*Chandler-Dunbar Water Power* v. *U. S.*, 229 U. S. 53; *Lewis Blue Point Oyster Cultivation Co.* v. *Briggs*, 198 N. Y. 287; 229 U. S. 82). We held, however, that the legislature did not violate the Constitution in refusing to exert the full measure of its might. Mere gifts and benevolences in aid of private undertakings, the Constitution does prohibit (*Lehigh Valley R. R. Co.* v. *Canal Board, supra*, at p. 475; *Stemmler* v. *Mayor, etc., of N. Y.,* 179 N. Y. 473; *Loan Assn.* v. *Topeka*, 20 Wall. 655; *Bank of Rome* v. *Vil. of Rome*, 18 N. Y. 38; 2 Lincoln's Constitutional History of N. Y. pp. 91, 179). It does not prohibit the recognition of claims which have their roots in equity and justice (*Lehigh Valley R. R. Co.* v. *Canal Board, supra; O'Hara* v. *State of N. Y.,* 112 N. Y. 146; *Munro* v. *State of N. Y.,* 223 N. Y. 208; *U. S.* v. *Realty Co.*, 163 U. S. 427; *Guthrie Nat. Bank* v. *Guthrie*, 173 U. S. 528, 535). This is not a case where the legislature, after building the canal, has voted com-

pensation retrospectively for the expenses of a private undertaking. We say that to exclude a problem, and not to suggest its answer. This is a case where the legislature, by action looking to the future, has defined the terms of equity and justice upon which it will go into an enterprise. In fixing these conditions, the legislature has a wide discretion (*Lehigh Valley R. R. Co.* v. *Canal Board*, at p. 476). Courts will not revise its judgment unless there has been manifest abuse (*U. S.* v. *Realty Co., supra*).

This case is governed, therefore, by our decision in that of the Lehigh Valley railroad so far as the facts of the two cases are the same. The state finds a distinction between them in the terms of the claimant's permit. In the earlier case there was an implied reservation by the state of the right to destroy the bridge in the improvement of navigation (*Lewis Blue Point Oyster Cultivation Co.* v. *Briggs*, 198 N. Y. 287, 292). In this case the reservation was express. We think the difference is unsubstantial. The power of the state is not changed by the form of reservation. Even though no permit had been granted, the duty of the railroad would be the same. The equity of its position is not destroyed by its promise to obey the law. In such matters we must go beneath the form of the transaction to its substance (*People* v. *Crane*, 214 N. Y. 154, 166). In form only the duty is contractual. Back of the form of contract there lies the substance of submission to the coercive power of the state. We are not dealing with a free bargain, which has been found afterwards to be a hard one. What the legislature's power of relief or dispensation may be in such circumstances, we need not now determine. We are dealing with a bargain dictated by the law. Between such a case and that of the Lehigh Valley railroad we find no difference in principle. The state was about to execute a great public work. It saw that in the doing of that work there would be destruction of private property.

Much of the damage would be *damnum absque injuria.*
None the less it would be damage.   The result would be
inequality in the distribution of public burdens.   Some
would pay more dearly than others in proportion to
benefits received.   This inequality, the legislature, fixing
in advance the conditions of the undertaking, had the
power to correct.   It might refuse to launch an enter-
prise at the price of hardship and oppression.   There was
power to destroy, and leave the loss where it might fall.
There was also power to pay for the destruction, and
thereby re-establish some uniformity of proportion
between benefits and burdens.   The question was for the
legislature whether the equity of compensation was
strong enough to merit recognition.   We cannot hold it
to be illusory.

The question remains whether the claim was filed in
time.   The right of action accrued in March, 1908, when
the Superintendent of Public Works ordered the destruc-
tion of the old bridge and the building of another, or at
the very latest at the time when destruction was complete
(*Comey* v. *United Surety Co.,* 217 N. Y. 268, 276).   That
time is not stated with precision, but it was before
August, 1910.   The Statute of Limitations then in force
required claims to be filed within two years after they
accrued (Code Civ. Pro. sec. 264).   This claim was not
filed till May 8, 1916.   The question to be determined
is whether two statutes, one passed in 1915 and the other
in 1916, have lifted the statutory bar.   By chapter 640
of the Laws of 1915, which became a law May 14 of that
year, jurisdiction is conferred upon the Court of Claims
to " hear and determine any claim against the State,
heretofore accrued, which shall be filed within one year
after this act takes effect, for compensation or damages
for or on account of the appropriation by the state of any
lands, structures, waters, franchises or other property "
in connection with the improvement of the barge canal,
" notwithstanding the lapse of time since the accrual of

the claim." By chapter 420 of the Laws of 1916, which took effect May 4 of that year, the jurisdiction was extended to include claims for compensation or damages for or on account of the appropriation " or use " by the state of any lands, structures, waters, franchises, " easements " or other property, in connection with the same improvement.

We think this claim is one for compensation or damages for or on account of the appropriation of property within the meaning of these statutes. The building of the canal involved the destruction of existing bridges. To destroy a bridge is to appropriate it. That there would be no remedy for the appropriation, apart from statute, is immaterial. There is an appropriation, none the less. The term " is of the broadest import " (*Filor* v. *U. S.,* 9 Wall. 45, 49). It was not necessary to follow the procedure defined in section 4 of the Barge Canal Act (L. 1903, ch. 147). That section does not apply where title to the land on which the appropriated structure stands is already vested in the state. The state might have destroyed this bridge by its own agents or contractors. Instead of doing that, it ordered destruction by the owner. The act of the owner was not voluntary. It was submission to authority, backed by power (*Bruecher* v. *Village of Port Chester,* 101 N. Y. 240, 244; *Peyser* v. *Mayor, etc., of N. Y.,* 70 N. Y. 497). The result was the same as if the work of destruction had been done by the state itself. At once there came into being a right to compensation. The duty of the state was to build another bridge at its own cost, to replace the one destroyed. It refused to fulfill that duty, and put the burden on the owner, who yielded under protest. Reparation in damages must now atone for the wrong of the state in refusing reparation *in specie.* It is argued that the owner might have followed the example of the claimant in the *Lehigh Valley Railroad* case, and sued for an injunction. This does not help the wrongdoer. Injunction is a discretionary

remedy, not to be demanded as of right. The failure to invoke it does not bar the recovery of damages. The argument of the state would lead to a holding that if a bridge can be destroyed before an injunction order can be served, the owner becomes remediless. We cannot bring ourselves to that conclusion. On the refusal of the state to construct the bridge, the claimants had the right to construct it and charge the state with the expense. The recovery will be compensation or damages for property appropriated in the improvement of the canal.

We hold then that the claim falls within the protection of these statutes (L. 1915, ch. 640; L. 1916, ch. 420). The state contends, however, that the statutes are invalid. They are said to violate the command of the Constitution that "neither the legislature, canal board, nor any person or persons acting in behalf of the State, shall audit, allow or pay any claim which, as between citizens of the State, would be barred by lapse of time" (Constitution, art. VII, sec. 6). A cause of action is not barred by lapse of time as between citizens of the state unless there exists a tribunal of competent jurisdiction to which they may repair (*Parmenter* v. *State of N. Y.*, 135 N. Y. 154; *Bd. Suprs. Cayuga County* v. *State of N. Y.*, 153 N. Y. 279; *O'Hara* v. *State of N. Y.*, 112 N. Y. 146; *People ex rel. Essex Co.* v. *Miller*, 181 N. Y. 439, 445; *Jacobus* v. *Colgate*, 217 N. Y. 235, 245; *Hanger* v. *Abbott*, 6 Wall. 532; Code Civ. Pro. sec. 406). A tribunal was open to these claimants for two years after the accrual of their claim (Code Civ. Pro. sec. 264). The tribunal was then closed to them by force of the special limitation then applicable to claims against the state. One citizen holding a claim against another for the value of appropriated property would not lose it until six years had gone by with a competent tribunal at all times open for the adjudication of his rights. These claimants lost theirs at the end of two years. In 1915, when the enabling act was passed, more than six years

may have gone by since the accrual of the right; but during only two of those years were the claimants free to sue. It is not enough that their right of action had been barred, and barred by lapse of time. The question is whether it would have been barred by lapse of time " as between citizens of the state " (Constitution, art. VII, sec. 6). We pointed out in *Parmenter* v. *State of N. Y.* (*supra*, at p. 163) that the command of the Constitution may mean one of two things. It may mean that, viewing the state as a citizen, we must, none the less, continue to apply the special rules of limitation that govern suits against the state. In that view, a claim once barred can never be revived. It may mean that viewing the state as a citizen, we are to apply the rules of limitation that govern citizens generally when suing one another. In that view, a claim once barred may be revived when the claimant has been denied the same opportunity to enforce his rights against the state that citizen has against citizen in dealings between man and man. We found it unnecessary in deciding the *Parmenter* case to choose between these alternative constructions (135 N. Y. at p. 173). There, as in the later case of the claim of Cayuga county (153 N. Y. 279), there was no revival by the legislature of a claim already barred after reasonable opportunity for suit. The choice that was then postponed, must now be made.

We think the second of the two constructions must be accepted as the sounder, and that for several reasons. It accords more nearly than the other with the meaning suggested by the words of the Constitution when we read them naturally and simply (*People* v. *Rathbone*, 145 N. Y. 434, 439). It prohibits the legislature from subjecting the state to a less favorable limitation than the citizen, but leaves untouched the power to make the limitations equal. It supplies a maximum allowance of time that will govern audit and payment in default of any statute, for it imposes upon those who audit and pay the duty to keep within the rules of limitation that

are applicable between citizens (*City of Buffalo* v. *State of N. Y.*, 116 App. Div. 539; 191 N. Y. 534; *People ex rel. Essex County* v. *Miller*, 181 N. Y. 439; *Matter of Hoople*, 179 N. Y. 308). On the other hand, it sets no barrier to recognition or even revival until the maximum has been attained. In brief, it protects the state from hostile discrimination to the advantage of the citizen, and the citizen from hostile discrimination to the advantage of the state.

These considerations, if they stood alone, would go far to guide our choice. They are reinforced, however, by another, which becomes decisive in its cumulative weight. The meaning of this provision of the Constitution is at best ambiguous and doubtful. Much may fairly be said for each of the opposing views. The legislature has construed its own powers. The courts will not reverse that construction, unless error is clear (*People ex rel. Carter* v. *Rice*, 135 N. Y. 473, 484). To nullify the statute, " a case must be presented in which there can be no rational doubt " (*People ex rel. Carter* v. *Rice, supra*). The whole legislative power of the state is vested in the legislature, except as the Constitution has limited it. One who asserts the limitation must prove it. If the arguments balance, power is retained.

We have not overlooked *McDougall* v. *State of N. Y.* (109 N. Y. 73) and *Gates* v. *State of N. Y.* (128 N. Y. 221) pressed upon us as controlling by counsel for the defendant. In each of those cases the court professed to apply the general law of limitations that governs actions between citizens (109 N. Y. at pp. 78, 79; 128 N. Y. at p. 227). It seems to have been overlooked that limitations are suspended when there is no tribunal competent to adjudge (*Parmenter* v. *State of N. Y., supra*). The actual decision may, therefore, have been inconsistent with the principle professedly applied. In disposing of later controversies, courts do not hold themselves bound to the full extent by earlier judgments,

when a " question might have been raised, but passed *sub silentio* " (*Louisville Trust Co.* v. *Knott*, 191 U. S. 225; *New* v. *Oklahoma*, 195 U. S. 252, 256; *Schenck* v. *U. S.*, 249 U. S. 47, 52). This court did not view the *Gates* and *McDougall* cases as controlling when, in deciding the *Parmenter* case, it stated the alternative constructions of the Constitution, and postponed the choice between them. We think that reason sustains, and that precedent does not forbid, the choice we now make.

The judgment should be affirmed with costs.

HISCOCK, Ch. J., COLLIN, POUND, CRANE and ANDREWS, JJ., concur; CUDDEBACK, J., not voting.

Judgment affirmed.