The People of the State of New York ex rel. Essex County, Appellant, *v.* Nathan L. Miller, as Comptroller of the State of New York, Respondent.

Statute of Limitations — Claim of County for Moneys Lost by Exemption from Taxation — Const. Art. 7, § 6.   A proceeding by a county instituted in 1902, under chapter 515 of the Laws of 1901, to compel the state comptroller to credit it with moneys lost by reason of exemption from taxation of certain lands owned by railroads situated therein is barred by the Statute of Limitations, where it appears that such claim arose prior to 1889 and in that year was recognized and its payment directed (L. 1889, ch. 217), but through the laches of the county officers no steps were taken to enforce it and, therefore, it being one which as between citizens "would be barred by lapse of time," its payment is forbidden by the Constitution (Art. 7, § 6).

*People ex rel. Essex Co.* v. *Miller,* 85 App. Div. 145, affirmed.

(Argued April 25, 1905; decided May 30, 1905.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered August 5, 1903, which confirmed a determination of the defendant refusing to audit and allow a claim of the relator presented under the provisions of chapter 515 of the Laws of 1901 for taxes lost in consequence of previous exemptions of land in the county of Essex from taxation.

This proceeding was instituted by the relator, the County of Essex, to compel the state comptroller to credit it with the sum of $58,423.52, which it claimed under the provisions of chapter 515, L. 1901, providing for the restoration to various counties, including the relator, of moneys lost by reason of the exemption from taxation of certain lands owned by railroads situated therein. Among the lands thus exempted there were various tracts belonging to the Sacketts Harbor & Saratoga Railroad Company and its successors. These corporations had been authorized by the legislature to purchase lands in Essex and certain other counties in the northern part of the state, and to hold the same free from taxation. The exemptions thus created deprived the relator and the other

counties referred to of the taxes which they would otherwise have collected from the lands thus owned and held by these railroads. There were about 140,000 acres of such lands in Essex county, and the losses thus sustained form the basis of its claim.

The history of the railroad corporations referred to, and of the legislation which gives rise to this proceeding, is as follows: By chapter 207, L. 1848 (a special act), the Sacketts Harbor & Saratoga R. R. Co. was incorporated, with power to construct its road from Sacketts Harbor to Carthage, and from Carthage to Saratoga. Subsequently, and prior to 1857, it located the line of its road, a part of which passed through the westerly portion of Essex county. Under the act of 1848 the railroad company was granted the pre-emptive right to purchase from the state 250,000 acres of land in the counties of Herkimer and Hamilton. By subsequent acts the railroad company was authorized to acquire other land in the Adirondacks, and prior to 1857 it had acquired about 140,000 acres of land in Essex county. Owing to changes in its route no part of the railroad was ever actually built in any part of that county.

By chapter 98, L. 1857, the lands of the railroad company, "by whatever name the said corporation may hereafter be lawfully called, * * * shall be free and exempt from all taxation until the twelfth day of September, one thousand eight hundred and seventy-nine; but this section shall not apply to the roadbed or track, nor to lands occupied or used for structures necessary to the working of its road, nor to any lands after the same shall have been sold by said corporation." In the same year the name of the railroad was changed to "The Lake Ontario & Hudson River Railroad Company." (L. 1857, ch. 280.) The corporation subsequently became merged in a corporation organized under chapter 236 of the Laws of 1863, called the Adirondack Company, which acquired all the lands theretofore held by its predecessors. By the provisions of that act the new company was authorized to purchase 1,000,000 acres of land, and hold

1905.]     People ex rel. Essex County *v.* Miller.     441

N. Y. Rep.]                    Statement of case.

the same exempt from all taxation until September 12th, 1883. This exemption covered the lands above referred to, acquired by the Sacketts Harbor & Saratoga R. R. Co., and forms the basis of the present controversy.

For the purpose of providing a method whereby the counties to which the above exemptions applied could reimburse themselves for the moneys they had lost by reason of such exemptions, the legislature passed the, laws hereinafter mentioned.

L. 1862, Chapter 225 : " Section 1. The comptroller of the state of New York is hereby authorized and directed in his statement and settlement of the accounts of non-resident taxes returned from the counties of Essex and Warren as non-resident, and of the State tax apportioned on and charged to said counties, to credit the treasurers of said counties of Essex and Warren with the amount of all taxes heretofore rejected by the comptroller from the non-resident taxes returned and unpaid for the years eighteen hundred and fifty-seven, eighteen hundred and fifty-eight, eighteen hundred and fifty-nine and eighteen hundred and sixty, which were so rejected on the ground that the same were exempt from taxation," under ch. 98, L. 1857, above referred to, "and to cause any amount that may be found due to said treasurers of said counties of Essex and Warren, after such credit, and after stating the account of said counties of Essex and Warren, as in other respects provided by law, to be paid to the treasurers of said counties of Essex and Warren, out of the treasury of this state.

" Section 2. The comptroller shall hereafter in his annual statements or settlements of the account of non-resident taxes returned from the counties of Essex and Warren, as unpaid, not reject or disallow any part of said taxes so returned on the ground that the lands on which the same are assessed are exempt from taxation, under the acts above named in the first section of this act, or either of them ; but if said taxes are in other respects legally assessed and returned as unpaid, he shall admit and allow the same to the credit of said treas-

urers of said counties of Essex and Warren." Under this act there was credited to Essex county in 1862 the sum of $4,724.45.

L. 1868, Ch. 355, was similar in substance to the act of 1862, except that it covered all the exemptions granted by the acts above referred to, and included the taxes rejected by the comptroller during the years 1860 to 1867, both inclusive.

L. 1870, Ch. 487, was practically a repetition of the last two acts mentioned, except that it directed the comptroller to give credit for all taxes thus rejected during the years 1857 to 1867, both inclusive (the period covered by both such last-mentioned acts), and this credit was to be based on an assumed valuation of $1 an acre at the rate per cent of the taxes prevailing during those years.

L. 1889, Ch. 217, provided : ".The comptroller of this state is hereby authorized and required to state an account with the treasurers of the counties of Hamilton, Warren, Essex and Franklin, in which he shall credit said treasurers with the non-resident taxes, including the state tax apportioned to said counties from and including the year one thousand eight hundred and fifty-seven to and including the year one thousand eight hundred and sixty-seven, which were rejected, canceled or disallowed under the provisions " of the exemption acts above referred to, " and he shall also credit said treasurers in said account with the amount of the non-resident taxes, including the State tax from which the non-resident lands in these respective counties have been exempted by the aforesaid acts ; such amount shall be computed upon an assumed valuation of one dollar per acre, and at the rate per cent of such taxes in each of the years aforesaid, from one thousand eight hundred and fifty-seven to one thousand eight hundred and sixty-seven, inclusive, and from and including the year one thousand eight hundred and sixty-eight to one thousand eight hundred and eighty-three, inclusive. Any amount which shall be found due upon such stated account shall be paid to said counties respectively out of the treasury of this State."

It appears that the county of Essex did assess some of the exempted lands, and returned such assessments as non-resident taxes to the comptroller who rejected and canceled the same. Still other exempted lands were thus assessed but never returned to the comptroller. No legal proceedings were commenced to compel the comptroller to give the relator credit for such taxes on the exempted land under the provisions of the foregoing acts, until this proceeding was commenced in April, 1902, under the provision of chapter 515 of the Laws of 1901. That act amended chapter 355, L. 1868, as amended by chapter 217, L. 1889, as above set forth, by adding the following section: "The account herein provided for shall be stated by the comptroller, on or before January first, nineteen hundred and two, and shall include such taxes as may have been lost by the failure of the treasurer of these respective counties to return the same during the period of exemption mentioned in the aforesaid acts.    *    *    *"

The county of Essex presented to the comptroller a statement of the amount claimed by it by reason of the provisions of the foregoing acts, but the comptroller refused to admit the claim. The Appellate Division confirmed this determination and the relator now appeals to this court.

*Lewis E. Carr* and *Frank L. Bell* for appellant. The claim of the relator which was presented to the comptroller and rejected by him, was not, when presented, barred by any Statute of Limitations. (*Cayuga Co.* v. *State*, 153 N. Y. 279; *Parmenter* v. *State*, 135 N. Y. 154; *O'Hara* v. *State*, 112 N. Y. 146; *Ulster Co. Case*, 177 N. Y. 193; *Matter of Greene*, 166 N. Y. 485; *W. I. B. Co.* v. *Town of Attica*, 119 N. Y. 204; *Corkings* v. *State*, 99 N. Y. 491; *Matter of Clark* v. *Sheldon*, 106 N. Y. 104; 134 N. Y. 333; *Bridges Case*, 92 N. Y. 575; *Crowningshield Case*, 124 N. Y. 585.) Chapter 515 of the Laws of 1901 is constitutional, the legislature being clothed with ample power to recognize the claim and being the sole judge as to whether it should afford the relief provided for. (*People ex rel.* v. *Dayton*, 55 N. Y.

367; *People ex rel.* v. *Schuyler,* 79 N. Y. 201; *People* v. *Stephens,* 71 N. Y. 527.)

*Julius M. Mayer, Attorney-General (Horace McGuire* of counsel), for respondent. The claim of the relator is barred by the Statute of Limitations. (*Yates* v. *State,* 128 N. Y. 221; *McDougall* v. *State,* 109 N. Y. 73; *Cole* v. *State,* 102 N. Y. 48; *Cayuga Co.* v. *State,* 153 N. Y. 279; *Coxe* v. *State,* 144 N. Y. 396; *Corkings* v. *State,* 99 N. Y. 491; *McMaster* v. *State,* 103 N. Y. 547; *Parmenter* v. *State,* 135 N. Y. 154; *S. Mfg. Co.* v. *State,* 104 N. Y. 562; *Yaw* v. *State,* 127 N. Y. 190.)

WERNER, J. In this proceeding the county of Essex seeks to recover from the state certain moneys which, in the regular course of taxation, would have been paid as taxes upon lands situated in that county, but which were not collected because such lands were exempted from taxation by the several statutes above referred to. These statutes very clearly disclose their real origin and purpose. A corporation, whose ostensible purpose was to construct and operate a railroad, but whose real object seems to have been to acquire almost boundless tracts of Adirondack forest lands, succeeded in getting a railroad charter under a special act, which, as subsequently amended, gave it the pre-emptive right to purchase and hold such lands to the extent of a million acres. After large areas of such lands had been thus acquired, the legislature became convinced that a railroad company engaged in the laudable undertaking of acquiring a forest domain, ought not to be unduly burdened with taxes, and so it was ordained (L. 1857, ch. 98) that all the lands of the corporation, except those occupied by its roadbed and working structures, should be exempt from taxation until the year 1879. This period of exemption was subsequently and successively extended so that it ultimately embraced all the years from 1857 to 1883. It soon became apparent, of course, that this generosity of the state was being practiced at the expense of the "Adiron-

dack " counties embracing this railroad belt, and particularly of the relator, through whose territory not a rod of the railroad was ever laid, and so it was further enacted that the comptroller of the state, in his annual settlements with the treasurers of the counties named, should credit them with the amount of the taxes which the railroad lands would have paid if not thus exempted. Under the first of these statutes (L. 1862, ch. 225) the relator presented its claim and was credited in that year with the sum of $4,724.45. Other statutes of similar import were passed in 1868, 1870 and 1889, varying in details which are unimportant for the purposes of this discussion.

At various times since 1862 the successive treasurers of the relator have presented claims under these statutes to the comptroller which have been disallowed, and during the whole of the period from 1862 to 1883 such treasurers have neglected to present still other claims for large amounts to which the relator would then have been entitled if proper claims had been seasonably presented. The only legal proceeding ever instituted on relator's behalf upon these claims is the one at bar, and that was not commenced until 1902.

No argument is needed to establish the substantial character of relator's loss or the equity of its claim. The state interposes the Statute of Limitations as a defense, and it goes without saying that if this plea is well founded it must prevail, no matter how intrinsically meritorious the relator's claim may be, or how powerful the equitable considerations that support it. The original liability of the state to the relator, created by the statutes above referred to, was of such a character that, as between individuals, it would have been barred by the six years' statute (Sec. 382, Code Civ. Pro.), or at longest by the ten years' statute (Sec. 388, Code Civ. Pro.). Our State Constitution provides that " neither the legislature, the canal board nor any person or persons acting in behalf of the state, shall audit, allow or pay any claim which, as between citizens of the state, would be barred by lapse of time." (Art. VII, sec. 6.) There can be no

446     People ex rel. Essex County *v.* Miller.     [May,

Opinion of the Court, per Werner, J.          [Vol. 181.

doubt that these Statutes of Limitation, made applicable by this constitutional provision, constitute an effectual bar to the relator's claim, unless some extraneous or incidental condition existed or has intervened to prevent or arrest the operation of the statute or to extend the period of limitation. In this behalf the relator contends that a large portion of its claim consists of taxes lost by the failure of its successive treasurers to return the same to the comptroller during the period of exemption, and that not until 1901 did the state recognize its obligation to allow any such claim. (L. 1901, ch. 515.) If this contention is well founded, the relator may properly invoke the rule that lapse of time is never a bar to a claim against the state so long as there is no tribunal to which the claim may be presented, and by which it may be passed upon and payment awarded. (*Bd. Suprs. Cayuga County* v. *State of N. Y.* 153 N. Y. 280 ; *County of Ulster* v. *State of N. Y.* 177 id. 194.) Thus the controversy resolves itself into the single question whether, at any time prior to 1901, there existed a tribunal with jurisdiction to hear and determine the relator's claim. Since it is beyond dispute that the statute of 1889 (Chap. 217) was the first to cover the whole period of exemption from 1857 to 1883, we pass over the earlier statutes and address ourselves to the question whether the statute of 1901 gave to the relator any rights that it did not have under the statute of 1889. Under the statute of 1889 the comptroller was charged with the duty of stating an account with the treasurers of the county of Essex and the others named, in which such treasurers were to be credited with the non-resident taxes, including the state tax apportioned to such counties, which were " rejected, cancelled or disallowed," from and including 1857 to and including 1867, under the exemption acts above referred to. That part of the statute clearly referred *only* to the taxes " *rejected, cancelled or disallowed* " in the years from 1857 to 1867 inclusive. Then follows the further direction that the comptroller " shall also credit said treasurers in said account with the amount of the non-resident taxes, including the state tax from which the non-resident

1905.]     People ex rel. Essex County *v.* Miller.     447

N. Y. Rep.]     Opinion of the Court, per Werner, J.

lands in those respective counties have been exempted by the aforesaid acts,   *   *   *   from one thousand eight hundred and fifty-seven to one thousand eight hundred and sixty-seven, inclusive, and from and including one thousand eight hundred and sixty-eight to one thousand eight hundred and eighty-three inclusive." This latter portion of the statute, it will be observed, relates broadly to taxes "*exempted*," and not merely to such taxes "*rejected, cancelled or disallowed*," and it also refers a second time to the period from 1857 to 1867, thus indicating that it was the legislative intent to have the comptroller credit the several treasurers mentioned, not only with the amount of the non-resident taxes which had been returned and then rejected, canceled or disallowed between 1857 and 1867, but also with all of the non-resident taxes from 1857 to 1883 which had been exempted by any of the acts referred to, and without regard to the question whether they had ever been returned, rejected, canceled or disallowed, or not. If this was not what was intended by the legislature of 1889 we are utterly at a loss to account for the peculiar phraseology of the statute, by which the taxes "rejected, cancelled or disallowed" for the period from 1857 to 1867 are explicitly separated from the other " exempted" taxes for the whole period from 1857 to 1883. The final direction of the statute of 1889 is that "any amount which shall be found due upon such stated account shall be paid to said counties respectively out of the treasury of this state."

Turning now to the statute of 1901 (Ch. 515) we find that it directs the comptroller to include in his account with the counties named " such taxes as may have been lost by the failure of the treasurers of these respective counties to return the same during the period of exemption mentioned in the aforesaid acts." When we compare this language with that of the statute of 1889 the effort to resuscitate a defunct claim becomes palpable. It imposes upon the comptroller no duty, and it invests the counties named with no rights that did not exist under the statute of 1889. There is, to be sure, a change

of phraseology, but no change of meaning. Indeed, nothing more was possible, for the earlier statute covered the whole subject. This situation presents its own best commentary. With the same duties imposed and the same rights given by the statute of 1889 as by the statute of 1901, a period of twelve years elapsed, during every day of which the relator had the right to the very remedy which it now seeks to invoke, or any other remedy which a court of competent jurisdiction could properly have granted. It failed to obtain relief, not because there was no tribunal to hear and decide its cause, but on account of the laches of its officers. The conclusion from all this is as obvious as it is inevitable. The relator must fail because its claim is one " which, as between citizens of the state, would be barred by lapse of time."

The order of the Appellate Division, confirming the determination of the comptroller, should be affirmed, with costs.

CULLEN, Ch. J., GRAY, O'BRIEN, BARTLETT, HAIGHT and VANN, JJ., concur.

Order affirmed.