JOHN H. HUGHES, Appellant, v. JOHN H. STOUTENBURG, as Trustee under the Last Will and Testament of JOHN H. HUGHES, Deceased, Appellant, Impleaded with THE ROMAN CATHOLIC ORPHAN ASYLUM and Others, Respondents.

(*Supreme Court, Appellate Division, First Department, June* 18, 1915.)

WILL—BEQUESTS FOR CHARITABLE USES*—COMPUTATION OF AMOUNT LEFT FOR CHARITY—EFFECT OF ACCEPTANCE OF PROVISION IN LIEU OF DOWER—WILL CONSTRUED—DISPOSITION OF TRUST FUND AFTER MAJORITY OF BENEFICIARY—CAPACITY OF CHARITABLE INSTITUTIONS TO TAKE BY WILL—BEQUESTS TO INSTITUTIONS NOT INCORPORATED—FORM OF DECREE DIRECTING DIVISION OF RESIDUARY ESTATE AMONG CHARITABLE INSTITUTIONS—PRACTICE—WHEN CAPACITY OF LEGATEE TO TAKE MAY BE DETERMINED ON ACCOUNTING—BURDEN OF PROOF—EFFECT OF DECREES ON PRIOR ACCOUNTING—STATUTE OF LIMITATIONS—DECREE THAT PAYMENT OF CHARITABLE BEQUESTS BE DEFERRED UNTIL EXPIRATION OF TRUST.

Where all persons interested in a decendent's estate acquiesced in a decree of the surrogate determining that a legacy which was expressly

* See note Vol. 13, p. 96.

made in lieu of dower be paid to the testator's widow, her dower rights were thereby released as to the date of the death of the testator. Hence, the dower rights are not to be considered in determining whether the testator has left more than one-half of his estate to charitable uses contrary to the provisions of·chapter 360 of the Laws of 1860.

Although a provision creating a trust for the support and education of the testator's son during his minority did not in express terms provide that he should take the corpus should he attain his majority, such was the intention of the testator where it was expressly provided that in case the son did not live to attain his majority the corpus should go to a charitable institution.

The testator devised and bequeathed his residuary estate to certain specific institutions, share and share alike, which he designated as "churches and societies." Will construed, and *held*, that the Roman Catholic Orphan Asylum, Sisters of the Poor of St. Francis, Little Sisters of the Poor, and the Mission of the Immaculate Virgin in the City of New York were "societies" within the meaning of the will and entitled to share in the residuary estate, if otherwise competent to take.

While unincorporated charitable institutions cannot take under a will, *it seems*, that a bequest to an individual for the benefit of such unincorporated society may be good. This question, however, is not decided.

Where charitable institutions are given the residuary estate as tenants in common, share and share alike, the share of each is determined by the total number of beneficiaries designated, and it is error to decree that the residuary estate be divided into as many shares as there are incorporated beneficiaries. This, because, if a beneficiary designated cannot take, the legacy passes to the testator's next of kin as intestate property.

It is proper for the court, in ordering an accounting by a testamentary trustee who is directed to divide the residuary estate among specified charitable institutions, to direct that the capacity of the beneficiaries to take be determined upon the accounting. In such case the residuary legatees must upon the accounting show not only their incorporation but that they are competent to take the legacy.

It cannot be contended that one-third of the testator's estate was to be set apart for his widow before the payment of debts, where under successive decrees acquiesced in by all the parties is was determined that the testator only intended one-third of his net estate to be set apart for the widow.

Where a computation of the amount of the decedent's estate showed that the amount of bequests to charitable uses did not exceed one-half of the estate or violate the provisions of chapter 360 of the Laws of 1860, it is proper for the court to make the same holding, as a matter of law, where a subsequent expiration of certain trusts in no way increased the amount of the bequests to charity.

A next of kin who sues in equity to have certain legacies for charitable uses declared to be void, cannot invoke the Statute of Limitations to defeat legacies for charitable purposes payable out of the residuary estate, especially where, by the acquiescence of all parties concerned, a prior decree required the trustees to defer the payment of the charitable bequests until, by the expiration of certain trusts, it could be definitely determined whether the amount was in excess of that allowed by the statute. And this is true although the legatee was an infant at the time such decree was made.

For like reasons neither the testamentary trustee nor a trustee under the will of the estator's widow, will be heard to assert the Statute of Limitations.

*It seems,* that chapter 360 of the Laws of 1860, limiting bequests to charitable uses, authorizes by implication the withholding of the distribution of an estate when necessary to determine whether the amount devises or bequeathed for such purposes is in excess of the amount authorized.

SEPARATE APPEALS by the plaintiff, John H. Hughes, and the defendant, John H. Stoutenburgh, as trustee, from an interloctory judgment of the Supreme Court in favor of certain of the defendants, entered in the office of the clerk of the county of New York on the 26th day of June, 1914, upon the decision of the court after a trial at the New York Special Term.

Walter E. Godfrey, for the plaintiff, appellant.

J. Bleecker Miller, for the appellant, respondent, Stoutenburg, as executor, etc.

Joseph F. Daly, for the respondent The Roman Catholic Orphan Asylum.

John E. Donnelly (Alfred J. Amend with him on the brief), for the respondent Sisters of the Poor of St. Francis.

Michael J. Driscoll (John F. Couch with him on the brief), for the respondents Church of St. James and others.

LAUGHLIN, J.—This action, which was commenced on the 23d day of April, 1907, was brought for the construction of the will of plaintiff's father, John H. Hughes, who died on the 22d day of November, 1887, leaving a widow and plaintiff but no other heir at law or next of kin, and to have certain legacies therein contained declared void, and to have it adjudged that the right to all unpaid legacies is barred by the Statute of Limitations, and that plaintiff is now the owner and entitled to receive all the residuary and other funds of the estate remaining in the hands of the trustee less reasonable commissions and expenses.

The will and a codicil thereto were duly admitted to probate in the county of New York and letters testamentary were issued to the executors and trustees named therein on the 9th day of December, 1887. The testator left both real and personal property; and the executors were authorized to sell the real estate.

The first judicial settlement of the accounts of the executors was made by a decree of the Surrogate's Court on the 27th day of April, 1891, on their application. It appears thereby that the executors had sold the real estate and were charged with $16,318.68, the inventoried value of the personal property, and $71,974.20, the proceeds of the sales of real estate, including $6,852.29 "income," aggregating $88,292.88; and were credited with loss on inventory, debts not collected, disbursements made as shown by Schedule C of their accounts, $34,985.77, and by Schedule E thereof $3,448.50 which schedules are not in the record now before the court, aggregating $38,629.10, leaving in their hands cash and securities aggregating $49,663.78. It was also found by that decree that the gross amount of testator's estate at the time of his death was $81,245.78, and that his total debts were $24,993, leaving the net value of his estate $56,252.76, and that the amount lawfully distributable under chapter 360 of the Laws

of 1860, among the churches, institutions and societies named
in the will, was one-half that amount, or $28,126.38, which was
in accordance with the rule prescribed in Hollis v. Drew
Theological Seminary (95 N. Y. 166). The decree also fixed
the commissions which the executors were authorized to deduct
and retain from the amount then remaining in their hands,
and they were then directed to pay from the balance certain
sums as an allowance to a special guardian and for costs, and
to retain and invest $18,750.92, being one-third of the net
amount of the estate, and to hold the same in trust to pay the
income thereof to the widow during her life as directed by
clause " First " of the codicil, by which that provision was
made for the widow in lieu of dower, and to retain out of the
balance the sum of $5,000 and to invest and hold the same in
trust to apply the income thereof to the support and education
of plaintiff during his minority, as directed by clause " Third "
of the will. The executors were then directed to pay all other
specific legacies, which included a total of $9,200 for charitable
uses. They were also directed to retain the remainder, found
to be $17,710.14, " upon the trusts and with the powers pro-
vided in the eighteenth paragraph of" the will "to be distributed
as therein directed, or according to law under the further direc-
tion of this court upon the happening or determination of the
contingencies, or either of them, mentioned in the third para-
graph of " the will and in the second paragraph of the codicil.
All parties in interest acquiesced in that decree and the execu-
tors complied therewith. The dower of the widow was thereby
released as of the date of the death of the testator and it was
rightly not considered in determining whether more than one-
half of the estate was given to charitable uses. (Lord v. Lord,
44 Misc. Rep. 530. See, also, Chamberlain v. Chamberlain,
43 N. Y. 424.)

The 3d paragraph of the will provided that the respondent
the Roman Catholic Orphan Asylum should receive the $5,000

set apart for the support and education of plaintiff during minority, if he died before attaining his majority; and the 2d paragraph of the codicil provided that plaintiff, if living at the death of his mother, should receive the principal set apart for her life use, and that in the event of his earlier death the Roman Catholic Orphan Asylum should receive $10,000 of it and the remainder should be "divided and distributed to and among the churches and societies" named in the will. It is recited in said decree that the special guardian of the plaintiff, who was then an infant, reported to the Surrogate's Court that the testator had attempted to give to charitable uses more than was authorized by said act of 1860.

The 18th paragraph of the will gave the residuary estate to various churches, institutions and societies, bequests and devises to which would be subject to the provisions of chapter 360 of the Laws of 1860 limiting such devises and bequests where the testator leaves a husband, wife, child or parent, to one-half of the net estate after the payment of debts. It is evident from the decree and from the opinion of the surrogate, pursuant to which it was entered, that the executors were so directed to hold the residuary estate until by the happenig of the contingencies with respect to the ownership of the corpus of the two trust funds it could be determined whether the distribution of the whole or any part of the residuary estate as directed by the testator would contravene the provision of said statute. The plaintiff became of age on the 12th day of April, 1904, and although it is not expressly provided in the 3d paragraph of the will that he then became entitled to take the corpus of the trust fund of $5,000, the income of which until that time was to be used for his support and education, still it is plain that such was the intention of the testator, for it is expressly provided that in the event plaintiff should not live to attain his majority such corpus should go to the Roman Catholic Orphan Asylum. The

widow died on the 13th day of May, 1905, and thereupon by
the express terms of the 2d paragraph of the codicil the plain-
tiff became entitled to the principal set apart for the life use
of his mother. It appears that both of these trust funds have
been paid over to the plaintiff, and evidently that was author-
ized by the court or all parties acquiesced therein. Both con-
tingencies, therefore, have passed and the amount bequeathed
and devised to charitable uses was not increased by either.
Another decree was made *by the same surrogate* on the 12th
day of September, 1892, settling a supplementary account of
the executors. It relates solely to the balance of $17,710.14,
being the residuary estate which they were directed by the
first decree to hold. It is therein recited that it was claimed
by the executors that the first decree did not fully adjudicate
with respect to the rights of the widow in and to that fund in
that she had not been allowed the interest to which she was
entitled on the fund to be set apart for her use, and the court
was requested to decide the question. The surrogate sus-
tained the claim; and also found that plaintiff had not, by the
former decree, been allowed interest to which he was entitled.
The second decree accordingly directed further deductions from
said residuary fund for the widow, for plaintiff and for costs
and allowances, leaving a net balance of $12,977.07, which the
executors were directed to invest, in so far as they had not
invested it, and "to hold the said sum or the securities on
which the same has been or shall hereafter be invested and the
interest, income and profits thereof upon the trusts expressed
in the said Will or such of them as have not been heretofore
fully executed, or according to law, under the further direc-
tion of the Court." On the 17th day of October, 1903, the last
surviving executor died. On the 23d day of November, 1903,
by a decree of the Surrogate's Court, the defendant Stouten-
burgh was appointed substituted *trustee* in place of the *executors
and trustees* named in the will, and it was therein provided

that upon his qualifying the real and personal estate of the testator formerly vested in the deceased trustees should vest in him " upon the several trusts in the said will declared concerning the same." It appears by a decree of the Surrogate's Court made on the 21st day of June, 1905, that the accounts of the two surviving executors and trustees were judicially settled on the 8th day of January, 1903, and that they were then charged with having on hand the two trust funds and also the sum of $17,194.73 for the residuary estate, and that this residuary estate on the 21st day of June, 1905, amounted to $20,349.20, with the balance of which, not theretofore paid over to the substituted trustee, their representatives were charged; and the trustee was directed to hold the property received by him upon the trusts *declared* by the will " and in and by the decree " of April 27, 1891. It appears by the answer of the substituted trustee that all the property which came into his hands is set forth and accounted for by his account annually filed in 1905, 1906 and 1907, but they are not set forth and were not proved. The substituted trustee as executor of the estate of the widow asserted claim to the residuary estate as intestate property and also pleaded the Statute of Limitations against the claims of the residuary legatees. It thus appears that the will has been fully executed, with the exception of distributing the residuary estate. On the trial, after formal proof with respect to a demand by plaintiff for the balance of the residuary estate in the hands of the trustee, and with respect to the incorporation of some of the defendants, and the decrees to which reference has been made, and certain other formal proof and a statement of the claims of the respective parties and motions for judgment on the pleadings, the case was closed. Therafter the court made a decision authorizing the entry of the interlocutory judgment from which this appeal was taken.

By the 18th paragraph of the will the testator gave, devised

and bequeathed all the rest, residue and remainder of his estate, both real and personal, to his executors " to divide and distribute the same to and among the several Churches and Societies hereinbefore named; share and share alike." In the preceding paragraphs of the will five churches and five societies bearing the same name, but connected with different churches, are designated *as churches and societies* respectively; and five other institutions are named, viz., said Roman Catholic Orphan Asylum, " Sister Eugenie, for the benefit of the Poor School connected with " a church to which a specific legacy was given, " Mission of the Immaculate Virgin in Lafayette Place in the City of New York," " Little Sisters of the Poor connected with St. Joseph's Home" in Seventieth street in the city of New York, and " St. Francis Hospital in Fifth Street in the City of New York." By " St. Francis Hospital in Fifth Street ". undoubtedly the defendant Sisters of the Poor of St. Francis which conducted the hospital was meant. (Johnston v. Hughes, 187 N. Y. 446.) Only eight of said fifteen churches, societies and institutions claiming to be residuary legatees have appeared and pleaded and only four have been shown by evidence or conceded to have been incorporated and competent to take bequests and devises, and even those have not shown that they had not theretofore taken all permitted by their respective charters or other laws.

It is contended in behalf of the plaintiff that four of these fifteeen, namely, the Roman Catholic Orphan Asylum, Sisters of the Poor of St. Francis, Little Sisters of the Poor, and Mission of the Immaculate Virgin, are not *societies* within the provisions of paragraph 18 of the will. The only provisions expressly relating to the Roman Catholic Orphan Asylum in the will and codicil are those contained in the 3d paragraph of the will and in clause 2 of the codicil, the substance of which has already been stated. The Roman Catholic Orphan Asylum was not given a *specific* legacy, and the express provisions with

respect to it are not directly connected with the provisions with respect to churches and societies designated as such; and in the 2d clause of the codicil the testator uses the words " churches and societies " in a manner which it is claimed indicates that he did not consider that he had designated the asylum as a church or society, for in the event that the plaintiff predeceased his mother the testator gave $10,000 of the corpus of the trust fund for the benefit of the mother to the asylum and directed that the balance be divided and distributed " to and among the churches and societies in my said Will named, share and share alike." It is contended that if he classed the asylum as a society, he would likely have here inserted the word *other* before societies, for otherwise he would be giving it a further share in the remainder of that fund. These arguments are not without force; but the asylum and the three other institutions which were given and have received specific legacies, while neither churches nor societies in the strict sense of the word, are in a broader sense *societies* (see 25 Am. & Eng. Ency. of Law [2d ed.], 1130) connected with a particular religious denomination in which the testator appears to have been deeply interested, and if he did not intend to include them all as residuary legatees it is reasonably to be inferred that he would have more clearly indicated those he intended should take. I am of opinion, therefore, that they are included as residuary legatees and entiteld to take, if they are *otherwise* competent and entitled to take.

It has been assumed, without proof or concession, that some of said societies and institutions were not incorporated. The appellants contend that unincorporated societies cannot take, and such appears to be the law. (Fralick v. Lyford, 107 App. Div. 543; affd., 187 N. Y. 524; Owens v. Missionary Society of M. E. Church, 14 id. 380; Catt v. Catt, 118 App. Div. 750. See, also, White v. Howard, 46 N. Y. 144.) If, however, an educational or other charitable use is specified with sufficient

definiteness, it may be that the said bequest to Sister Eugenie for the benefit of the " Poor School," at least, with respect to which there has been no appearance, can be sustained on the theory that a valid lawful trust was created even though the " Poor School " was not incorporated or competent to take (See Laws of 1893, ch. 701, as amd. by Laws of 1901, chap. 291; now in part Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 12, as amd. by Laws of 1909, chap. 144; Manly v. Fiske, 139 App. Div. 665; affd., 201 N. Y. 546; Ely v. Ely, 163 App. Div. 320, 339, and Matter of Miller, 149 id. 113); but we do not decide the question now.

The decision provides that the residuary estate shall be equally divided among the residuary legatees who are duly incorporated, and that the residuary legatees who failed to prove their incorporation or capacity to take on the trial of the issues at Special Term may do so on the accounting, and then proceeds to divide the residuary estate into fifteenths on the theory that all churches and societies referred to in the residuary clause are entitled to take; and the interlocutory judgment directs that the residuary estate be divided among the fifteen churches, societies and institutions or " such of them as were incorporated at the date of decedent's death." These provisions of the decision and interlocutory judgment cannot be sustained. The beneficiaries competent to take the *residuary* estate take as tenants in common and only take a share of the residuary estate in proportion to the total number of beneficiaries designated; and where a beneficiary designated cannot take, the legacy passes as intestate property. (Matter of Hoffman, 201 N. Y. 247, 255; Booth v. Baptist Church, 126 id. 215; Matter of Kimberley, 150 id. 90.) In Chamberlain v. Chamberlain (*supra*) it appears by the reporter's note at page 477 that on the settlement of the decree in that case the decision was so modified that one of the two residuary legatees to whom the residuary estate was given in equal shares was permitted to take part

of the legacy given to the other if the other was not entitled to take it all; but if such was the decision, it must be deemed to have been overruled by the later authorities herein cited.    I am, therefore, of opinion that the plaintiff is entitled to take the share of any beneficiary not competent to take, or not entitled to take, and, therefore, the interlocutory judgment should be modified accordingly.

It is also contended by appellants that the court should have decided which of the beneficiaries are incorporated and are entitled to take, instead of leaving those question to be determined from evidence to be offered on the accounting. Those questions do not affect the accounting. They merely affect the distribution.   Evidently it was deemed more convenient to make the proof before the referee on the accounting, than on the trial; and we think it was competent for the court so to direct as those questions are not involved in the principal issues or in the relief demanded and they may be reserved for decision on the report of the referee without prejudice to the rights of any party.    (See Code Civ. Pro., § 1015.)    The residuary legatees, however, should show not only their incorporation, but that it is competent for them to take these legacies.    (See Haxtun v. Corse, 2 Barb. Ch. 521; Fowler Charitable Uses, 81, 97; Marx v. McGlynn, 88 N. Y. 376; Betts v. Betts, 4 Abb. N. C. 317.) Those defendants who have appeared and answered are permitted to appear before the referee and prove that they are entitled to a share in the estate; this determination being without prejudice to an application by ether of the defendants in default to open the default and interpose an answer and present their proof to the referee.

The plaintiff appellant further contends that one-third of the estate was not set apart for the use of his mother, and that she did not receive the income of one-third, and that upon her death he did not receive the one-third.   This argument appears to be made on the erroneous theory that the will required one-third

of the gross estate without deduction for debts to be set apart for the use of plaintiff's mother. Manifestly the testator intended that only one-third of his net estate should be so set apart; and such has been the construction of the will from the outset by decree binding upon and acquiesced in by all parties.

The plaintiff also contends that the court erred in holding that the testator did not leave more than one-half of the property to charitable uses, and claims that an accounting is essential to the decision of that question. The court was right in holding as matter of law that the estate bequeathed and devised for charitable uses was not in excess of the amount authorized by the statute. It could not be determined until the happening of the contingencies with respect to the two trust funds how much the testator had devised for charitable uses. But those events having transpired without increasing the amount of bequests otherwise made to charitable uses, it now appears that the testator only devised to such uses the $9,200 in specific legacies and the residuary estate, which, by the first decree, was found to be $17,710.14. These two amounts aggreagte $26,910.14, which is considerably less than the amount which it was adjudged by the original decree could lawfully be given to charitable uses.

The plaintiff, appellant, alleged, in effect, that the residuary legacies became due and payable within one year from the first judicial accounting, which was on the 27th day of April, 1891, and he prayed that it be adjudged that the Statute of Limitations of either six or ten years is a bar to any right of the residuary legatees to payment of the legacies. The trustee did not presume to attempt to invoke the Statute of Limitations. Manifestly the plaintiff cannot invoke it, for no claim is made against him by the residuary legatees, and, moreover, he could not come into a court of equity as plaintiff and invoke it. (Matter of Rogers, 153 N. Y. 316; Pratt v. R. C. Orphan Asylum, 20 App. Div. 352; affd., *sub nom.* Conkling v. R. C.

Orphan Asylum, 166 N. Y. 593; House v. Carr, 185 id. 453; Code Civ. Proc., § 413.) Furthermore, there is no merit in or precedent for this claim, and it is predicated on erroneous premises. It is manifest, and must have been perfectly well understood by all parties in interest, why the residuary legacies were not directed to be paid by the original decree, and all acquiesced in the assumption of the court of jurisdiction, in view of the provisions of the act of 1860, to direct the executors and trustees to hold the residuary estate until the happening of the contingencies with respect to the two trust funds. Regardless of whether or not the court was authorized to make the decree, neither the plaintiff nor the trustee should be permitted to question it at this time, nor is it affected by the fact that the plaintiff was then an infant. He has not been prejudiced, for on no theory was he entitled to any part of the fund *lawfully* bequeathed or devised to a residuary legatee; and it would be unconscionable to permit him now to succeed thereto on the theory that such residuary legatees have no sooner proceeded, in defiance to the numerous decrees of the Surrogate's Court, to assert their rights as residuary legatees. For like reason the trustee as executor of the widow cannot be heard to assert the Statute of Limitations. By a process of reasoning, which it is difficult to follow, it is claimed that the very decrees which forbid the distribution of the residuary estate until the happening of the contingencies constitute adjudications that the residuary legatees are not entitled to take. It seems to be argued that since the will created no trust with respect to the residuary estate, it was the mandatory duty of the court to direct its distribuion, and that having failed to direct its distribution to the residuary legatees, the decree should be construed as directing that it be held for the benefit of the next of kin of the testator. As already observed, the intention of the court in making the decrees requiring that the residuary estate be held was perfectly clear

and recognized the rights of the residuary legatees; and their rights were never attempted to be repudiated by the executors or trustees and are not now. There was at least room for the contention that the statute of 1860 (now Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 17) impliedly authorizes the withholding of the distribution of an estate where necessary to determine whether the amount devised or bequeathed for charitable uss is in excess of the amount authorized, and on that theory the moneys were not ready for distribution as contemplated by the provisions of section 2743 of the Code of Civil Procedure, which provides that the decree must direct the payment and distribution where " any part of the estate remains and is ready to be distributed." (Now Code Civ. Pro., § 2735, as amd. by Laws of 1914, chap. 443.) It may be that the court might have directed the distribution of the residuary estate which would have subjected the asylum to all risk with respect to the statute of 1860; but it is unnecessary to decide that question, for whether the distribution of the whole or any part of the residuary estate could have been obtained or compelled before the happening of the contingency to which reference has been made either by an application to the Surrogate's Court or an appeal from the decree of the surrogate or by action in the Supreme Court, need not now be considered, for, as held by the trial court, the rights of the residuary legatees were preserved by the decree.

It follows, therefore, that the decision and interlocutory judgment should be modified in accordance with the views herein expressed so that the residuary legatees who are found to be competent to take and may take without exceeding the limitations prescribed by the Legislature on their powers so to do, shall each take one-fifteenth of the residuary estate, and in case a residuary legatee was not competent to take or could not take, the plaintiff shall take the one-fifteenth intended for such residuary legatee, and leaving all questions with respect

to the *competency* and right of the residuary legatees to take and with respect to the validity of any residuary legacy on the theory of its being in trust for a sufficiently definite charitable use, if not to a corporation authorized to take, to be decided on the coming in of the referee's report, and as so modified affirmed, without costs.

INGRAHAM, P. J., McLAUGHLIN, DOWLING and HOTCHKISS, JJ., concurred.

Judgment modified as directed in opinion and as modified affirmed, without costs.   Order to be settled on notice.