JOHN SEROW, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
Claim No. 17208.

Court of Claims, April, 1923.

**Claims against the State — collapse of bridge at canal terminal — injury to motor truck owner — possession and ownership of bridge by state — sign at end of bridge warning users of the weight limit of vehicles — when no defense to claim.**

In 1916 the state appropriated certain property on the east side of the Oswego river in the city of Oswego for a Barge canal terminal. The property was bounded on the south by East Cayuga street, which extended from the Oswego river across the hydraulic canal to East First street. The property was appropriated by the state pursuant to the Canal Terminals Law (Laws of 1911, chap. 746), section 14 of which provides: " The terminals provided for in this act when constructed shall be and remain the property of the state, and all of said terminals including docks, locks, dams, bridges, and machinery, shall be operated by it and shall remain under its management and control forever." In the several modifications of such appropriation the bridge over said hydraulic canal, the only entry or approach to the terminal from the public streets of the city, remained within the boundaries of the land retained by the state. On November 4, 1921, claimant, a contractor, sitting on the driver's seat of his five-ton motor truck, with his chauffeur, was crossing the bridge over said canal. They had been to the East Side Barge canal terminal in the city of Oswego, loaded the truck with two and one-half tons of sand, and were returning going easterly over the bridge. When fairly upon the bridge, without warning the stringers thereof near the westerly abutment broke and the truck with claimant and his chauffeur was precipitated into the bottom of the canal some fifteen or twenty feet below. *Held,* that inasmuch as the bridge is a part of the terminal the state, which at the time of the accident was in absolute possession and ownership of the bridge as well as the street at either end of it, was responsible for its maintenance and was, therefore, liable for the damages to claimant's person and property.

A contention that because the appropriation map was never served upon the city of Oswego the bridge was never appropriated from it was not a sufficient answer to the fact that the state not only included this bridge within the boundaries of the property it appropriated as set forth on its appropriation map, but that it entered into possession thereof, exerted dominion over the same, dismantled it, reconstructed it, granted an easement to abutting owners to use it, and its ownership and dominion of the same was acknowledged and acquiesced in by the city authorities of Oswego.

An almost illegible sign at the end of the bridge that it was unsafe for more than one ton, concealed by weeds and unknown to claimant or his chauffeur, was no protection against the claim herein.

Claimant held fairly and justly entitled to an award aggregating $3,250.93, for the items of damage specified in the opinion herein.

CORWIN, J., concurs; SMITH, J., dissents.

CLAIM for injuries by collapse of bridge over canal.

Misc. 576]                Court of Claims, April, 1923.

*John M. Farrell (E. J. Mizen,* of counsel), for claimant.

*Glenn H. Frank,* deputy attorney-general, for state of New York.

ACKERSON, P. J.   On the 4th day of November, 1921, the claimant, a contractor, accompanied by his chauffeur, was crossing the bridge over the hydraulic canal on East Cayuga street in the city of Oswego.

Claimant was riding on the driver's seat of his five-ton White motor truck alongside of his chauffeur who was driving it. They had been to the East Side Barge canal terminal in the city of Oswego, loaded the truck with two and one-half tons of sand and were returning going easterly over the bridge in question which is the only entrance to said terminal. When fairly upon the bridge without warning the stringers of said bridge near the westerly abutment broke and the truck with claimant and his chauffeur was precipitated into the bottom of the canal some fifteen or twenty feet below. The canal prism was dry at this time.

Claimant suffered serious personal injuries, his truck was badly damaged, and he suffered considerable pecuniary loss in addition by reason of being physically unable to work and also by reason of being deprived of the use of his truck for several weeks.

So much of his claim the state does not seriously dispute.

Claimant contends that the state is liable for the damages and the state answers that not it but the city of Oswego should be made to respond for whatever injury has been done.

The question before us, therefore, is who at the time of this accident was responsible for the care and maintenance of the bridge in question.

The evidence discloses that in June, 1916, the state of New York appropriated certain property on the east side of the Oswego river in the city of Oswego from the Peoples Gas and Electric Company for a Barge canal terminal. This property was bounded on the south by East Cayuga street, which extended easterly from the Oswego river across the hydraulic canal to East First street. The appropriation included the north eighty feet of East Cayuga street extending from the Oswego river to said East First street. This portion of East Cayuga street included the bridge in question. There is no claim made by the state that the city of Oswego owned the fee of this street and there is no evidence in this case to establish that it was ever dedicated as a public street and accepted as such by the city of Oswego. The Court of Appeals, however, in the case of *Oswego* v. *Oswego Canal Co.,* 6 N. Y. 257, so held.

37

Several modifications of this appropriation were afterwards made, but in all of them the bridge in question remains within the boundaries of the land retained by the state.

This appropriation was made by the state pursuant to chapter 746 of the Laws of 1911, known as the Canal Terminals Law. In section 14 of said terminal law we find this language: "The terminals provided for in this act when constructed shall be and remain the property of the state, and all of said terminals, including docks, locks, dams, bridges and machinery, shall be operated by it and shall remain under its management and control forever." The necessity of making this bridge a part of the terminals at this point is apparent because it is the only entry or approach to the terminal from the public streets of the city.

The contention of the claimant that the state is responsible for the maintenance of this bridge would seem to be, therefore, well founded, inasmuch as the bridge is a part of the terminal itself and, therefore, under the law, the property of the state.

The learned deputy attorney-general contends, however, that the bridge was never appropriated from the city because the appropriation map was never served on the city of Oswego. This, however, is not a sufficient answer to the fact that the state not only included this bridge within the boundaries of the property it appropriated as set forth on its appropriation map, but that it entered into possession thereof, exerted dominion over the same, dismantled it, reconstructed it, granted an easement to abutting owners to use it, and its ownership and dominion of the same was acknowledged and acquiesced in by the city authorities of Oswego.

On the 9th day of July, 1915, about a year before this appropriation the common council of the city of Oswego passed a resolution recognizing the intention of the state to build a canal terminal at the place in question, to include all of East Cayuga street between the Oswego river and East First street, and expressing the purpose of the city of Oswego to aid and assist the state in the construction of said terminal and resolving as follows:

"*Resolved,* that the City of Oswego do give and grant to the State of New York the use and right to use that portion of East Seneca Street and that portion of Cayuga Street lying between East First Street and the Oswego River, or so much thereof as the State of New York may deem necessary for its purpose, and that the Mayor and City Attorney be and they hereby are authorized and directed to take any and all steps necessary to carry this grant into effect.

"This grant and right being given subject to the rights of any abutting property owners on said streets.

" That the City of Oswego erect a suitable bridge to be approved by the State Engineer over the Power Canal in East Cayuga Street and leading to the East Side Barge Canal Terminal, upon the letting of the contract to construct said terminal, and that the Mayor and Commissioner of Works be, and they hereby are instructed to take any and all steps necessary to that end."

The city of Oswego, therefore, welcomed this appropriation, agreed to, acquiesced in and consented to it, and furthermore agreed to construct a new bridge at the point in question not for the city of Oswego but for the state as part of said terminal.

Up to the time of this accident, however, the city had not made good on its suggestion that it would construct a bridge here for the state.

On consulting the correspondence in evidence, we find that when the state called upon the city of Oswego to construct a bridge here as it had agreed to do, the city replied that the land had been appropriated by the state and until such time as the state transferred unto the city of Oswego the necessary land on which to erect the bridge it could not proceed with the construction.

At the time of this accident, therefore, the city conceded that the portion of East Cayuga street, at least, upon which the bridge rested had been appropriated by the state. And whether admitted or not the state had in fact appropriated the bridge by taking possession of it. *American Woolen Co.* v. *State of New York*, 195 App. Div. 698; *Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351, 357.

At the time in question, therefore, the state was in the absolute possession and ownership of the bridge in question as well as the street at either end of it. It was part of the canal terminal and the state was responsible for maintaining it in a safe and proper condition for travel, which it failed to do.

The sign at the end of the bridge that it was unsafe for more than one ton was almost illegible, concealed by weeds and unknown to claimant or his chauffeur. Such a sign, therefore, so placed, is of no protection against a claim for damage except in a case where the claimant had actual notice thereof, which is not this case.

We find, therefore, that the claimant is entitled to an award against the state for the following items of damage:

Expense of removing the truck from the bottom of the canal and extricating it from the bridge, $127.93.

Claimant suffered much pain, was confined to his bed for about ten days and to his home for about two months and is still suffering to some extent from the injuries received, for all of which we allow him $1,000.

We allow for depreciation on the truck $1,500. This includes, of course, what he paid out for repairs.

Claimant paid for doctor's services and medicines the sum of $68, for which he is entitled to be reimbursed.

Claimant has proven that he was deprived of the use of this truck forty-seven days and the net value of the use of said truck was $15 per day, which would amount to about $705. But he has also proven that during the time the truck was out of commission he paid the sum of $315 for the rent of trucks he was compelled to hire to carry on his business. We consider the latter sum, therefore, the true measure of his actual damages to which he is entitled.

Claimant testifies that when working he placed himself on his own payroll and drew $40 per week, and that, therefore, as he was laid up eight weeks he lost $320 in wages. We cannot allow him for this amount for the reason that he hired a man to take his place for $30 per week, and we allow him for the $240 that he paid for his substitute.

The sum of the above items is $3,250.93, for which we believe the claimant is fairly and justly entitled to an award against the state.

CORWIN, J. concurs.

SMITH, J. (dissenting). The majority of the court has held that the state owned the bridge where the accident which is the foundation of this claim occurred and was responsible for its maintenance. In my view the record does not support such a conclusion.

That Cayuga street is, and was, a city street in the city of Oswego seems to be beyond doubt. In fact, the record does not disclose any dispute as to that proposition upon the trial.

In *Oswego* v. *Oswego Canal Co.*, 6 N. Y. 257, it was held that the lands forming the bed of this and another street in Oswego had been dedicated for street purposes by the state of New York, as the owner thereof, by virtue of the provisions of chapter 231 of the Laws of 1811 and the map of the town of Fredericksburg made pursuant thereto, and that such dedication had been adopted and accepted upon the incorporation of the village of Oswego in the year 1828.

In this situation, while the title to the fee of the bed of the street remained in the state and passed to its grantees of the adjoining lands, such title was and continued to be burdened by the public easement for street purposes, which easement was the property first of the village of Oswego, later of the city of Oswego, and such

was the situation when the state made its appropriations of lands in the vicinity for Barge canal purposes.

While the appropriation maps include within the appropriated area a considerable part of the land over which Cayuga street extends, the record discloses no intention to appropriate from the city of Oswego its easement for street purposes over all of the lands forming the bed of the street. The appropriation maps purport to appropriate nothing from the city of Oswego. The record does not disclose that the appropriation maps were served upon the city. That Cayuga street was to remain as a street of the city of Oswego and the bridge in question as a part of that street, the property of the city, seems to have been recognized both by the state and by the city of Oswego.

Before any appropriation was made, the common council of the city adopted a resolution consenting to the use of the street, or so much thereof as the state might deem necessary, for the purpose of its Barge canal terminal, which further provided that the city of Oswego would erect a suitable bridge over the canal upon the letting by the state of its contract to construct the terminal. Certainly this action is not consistent with the proposition that the city's easement in Cayuga street was to be extinguished or that the ownership of the bridge and the responsibility for its maintenance were to be transferred from the city of Oswego to the state of New York.

The bridge in question was a wooden structure consisting of wooden stringers extending from either bank of the power canal toward the center of the canal where the stringers rested upon a timber bent erected in the bed of the canal. Wood planking laid upon these stringers formed the deck or flooring of the bridge. There were also wooden guard rails on either side of the bridge.

During the course of terminal construction, it became necessary or convenient to remove this bridge to facilitate the terminal construction. At least the bridge was removed by the contractor who had the terminal construction contract with the state.

Upon the completion of the terminal contract, the bridge was restored by the contractor in exactly the form and condition in which it had existed before the terminal construction work was commenced, using for the work almost exclusively the identical materials of which the bridge had been constructed before the terminal work began. This was in the year 1917.

This temporary removal of the bridge structure for the purpose of facilitating the construction of the terminal and its restoration in *statu quo* immediately upon completion of the terminal work do not support the conclusion that the state intended to, or did

in fact, appropriate the bridge and divest the city of Oswego of its title thereto.

Aside from this temporary removal of the bridge and its restoration after the canal terminal work had been completed, the evidence discloses no dominion over, or care or maintenance of the bridge, and there is some evidence that the city of Oswego did maintain capacity signs at one or both ends of the bridge.

The accident out of which this claim arose occurred some four years after the state's work at this location had been completed and after, so far as the record shows, the state had had anything whatever to do with the bridge.

A short time after the accident the bridge was replaced by a new concrete structure erected by the city of Oswego. Upon the trial a witness sought to say that the city of Oswego performed this service for the state, but his remark to that effect was stricken out by the court.

The record does not disclose that the city performed this work for the state. It would probably be beyond the city's corporate power so to do. The presumption is that the city did this work on its own account in the performance of a lawful city function and in discharge of its own obligation.

Upon the record as made, the state of New York rested under no obligation to maintain the bridge after the completion of the Barge canal terminal work and is not responsible for the consequences of the neglect of the city of Oswego to keep the bridge in repair.

My conclusion is that the claim should be dismissed.

Award made for $3,250.93.